JONES DRILLING CORPORATION ET AL. *v.* ROTMAN ET AL.

[No. 30,532.  Filed February 5, 1964.]

*Paul F. Mason,* of Rockport, *George E. Taylor, Hays & Hays, Taylor & Taylor,* all of Sullivan, for appellants.

*Gilbert W. Gambill, James E. Sullivan, Gambill, Cox, Zwerner & Gambill,* of Terre Haute and *Paul R. Whitlock,* of Sullivan, for appellees.

PER CURIAM.—This case comes to us on transfer from the Appellate Court. (See 179 N. E. 2d 312)

The Appellate Court, in an opinion by Gonas, Judge, and a concurring opinion by Myers, Judge, concurred in by Ax, Cooper and Pfaff, Judges, reversed the trial court in this case, while Kelley, Judge, dissented, with Ryan and Bierly, Judges, concurring in the dissent. In reversing the trial court, the Appellate Court failed to state whether a new trial was to be granted or judgment entered.

The question involved before the Appellate Court was whether or not a party is entitled to a jury trial on an issue of law involved in a case brought in equity. If a new trial were to be granted, the Appellate Court failed to state whether it was to be granted merely upon the issue of law or upon both equity and law, which was tried by the court after a denial of a jury trial.

The background relevant to the issues here involved is as follows: Appellees assigned a one-half working interest in certain oil and gas leases which were located in Sullivan County, Indiana to the appellant, Jones

Drilling Corporation, which, under the contract, assumed certain burdens and obligations with reference to the operation, drilling and production of oil and gas from the lands covered by the lease. The contract provided for a forfeiture and rescission of the contract in event of default by the Jones Drilling Corporation.

In 1957 the appellees filed a complaint for rescission of the assignment contract, for an accounting and the appointment of a receiver, also asking for a restraining order enjoining the appellants from entering the leased premises. The restraining order was issued and the appellees posted a $1,000 bond to indemnify the appellants in event of damage from a wrongful issue of the restraining order. Later, upon hearing, this bond was increased to $15,000 and appellees failed to post the bond and the restraining order was dissolved. Subsequently the appellees filed an amended complaint seeking a rescission of the contract, an accounting, and a "receiver for the purpose of winding up the affairs of said partnership." To this, appellant, Jones Drilling Corporation, filed an answer amounting to a general denial and also filed a counterclaim in two paragraphs, the first paragraph setting up certain indebtedness claimed to be owed by the Rotmans and the Feldmans to the appellants, and a second paragraph alleging damages by reason of the alleged wrongful issuance of the restraining order.

For the purposes of brevity, we group together a number of the assignments of errors and specifications in the motion for a new trial.

It is urged that the decision of the court is not sustained by sufficient evidence, is contrary to law, and that the damages assessed were excessive. We have reviewed the evidence, and in view of the principles which limit us on review, we can not

reverse the trial court on these points. There was sufficient evidence before the trial court to justify its finding that appellants had failed to perform the conditions of the contract for working the oil interests, without going into the details with reference to testimony as to misappropriation of assets and misleading accounting statements made to the appellees.

■ The trial court heard evidence with reference to itemized statements submitted to the appellees totaling over $71,000, each of which was paid by the appellees under the agreement for the operation of the leases. Evidence also showed that personal property located on the leases in excess of $62,000 was entrusted to the appellants by the appellees, which had been substantially reduced at the time of the trial. From this and other evidence we do not think we can disturb the court's finding as excessive which granted the appellees a judgment of $20,476.70.

We come, however, to a more important phase of this case, namely, the right of the appellants to demand a jury trial on the second paragraph of counterclaim filed.

We need not cite authority for the proposition that appellee's amended complaint herein was grounded entirely in equity. It was a complaint for a rescission, accounting and winding up of partnership business. Likewise, it may be said that the first paragraph of "counterclaim" that was filed alleged an indebtedness as an issue which would be merged in a part of any accounting in the main action.

The question next arises: Is alleged damages for the wrongful issue of a temporary restraining order a part of the accounting proceedings? We point out that this is not properly a counterclaim, since it is matter that occurred subsequent to

and after the filing of the complaint for accounting, but the appellants saw fit, for some reason, to bring it into the main action for accounting. In view of the appellant's voluntary action in filing such a "counterclaim," we feel appellants can not now claim that it is not relevant to or part of the accounting action. No doubt it was appellant's desire, in the event any accounting was had and appellants were found indebted to appellees, to offset against such indebtedness any alleged damages which finally might be found.

It is to be noted further that the appellants did not sue on the bond given at the time of the issuance of the restraining order, which is the normal procedure.

In event appellants saw fit not to sue on the penalty bond, then only an action of malicious prosecution remained on an alleged wrongful issuance of a restraining order. In such an action there must be an allegation of and proof of malice before the appellants would be entitled to damages. 45 A. L. R., p. 1517; 16 I. L. E., Injunctions §161; *Harless et al.* v. *Consumers' Gas Trust Company* (1896), 14 Ind. App. 545, 43 N. E. 456.

The second paragraph of answer or "counterclaim" does not allege malice and is not a malicious prosecution action. We doubt, strictly speaking, that the appellant had any valid "counterclaim" that was before the court, if it had been subject to a demurrer.

We further point out that appellants have failed to show that they have been prejudiced by the action of the court in the denial of a jury trial, there being no proof in the case that the restraining order was "wrongfully" issued, even if the suit had been on the bond. The evidence seems undisputed that the court granted

the restraining order, and it was only dissolved or discontinued because of the failure of the appellees to post a bond in an additional penal sum. Be that as it may, the second paragraph of "counterclaim" was irresistibly drawn into the exclusive equity jurisdiction of the court by reason of the main action.

Where an essential part of a cause is exclusively of equitable jurisdiction, the whole case is drawn into equity. This is true, even though certain elements of the case may involve proceedings at law. For example, it is well recognized that in a suit on a note secured by a mortgage on real estate in which foreclosure of the mortgage lien is asked, the whole case is thrown into equity and is tried by the court without a jury, even though the note itself involves a suit at law, as distinguished from equity. 17 I. L. E., Jury, §16; *Carmichael* v. *Adams et al.* (1883), 91 Ind. 526.

In *Towns et al.* v. *Smith et al.* (1888), 115 Ind. 480, 481, 16 N. E. 811, 812, it is said:

"The position of the appellant in that regard is not maintainable. One feature of the case, it is true, was an action on a promissory note, and the relief demanded was merely of a pecuniary character. To that extent the proceeding resembles an ordinary action at law. In order to obtain final and more effectual relief, however, the suit combined a proceeding in the nature of a creditor's bill to set aside and cancel a fraudulent conveyance, which belongs exclusively to the procedure and jurisdiction of chancery. It follows, under the rule which declares that if any essential part of a cause is exclusively of equitable cognizance, the whole is drawn into equity, that the present was a case of equitable jurisdiction. *Hendricks* v. *Frank*, 86 Ind. 278; *Lake* v. *Lake*, 99 Ind. 339; *Quarl* v. *Abbett*, 102 Ind. 233 (243)."

In *Watson* v. *Watson* (1952), 231 Ind. 385, 394, 108 N. E. 2d 893, 898, it is said:

"This being a suit in equity 'the whole case is drawn into equity, and any item connected with the accounting of the partnership business may properly be adjudicated.' *Lesh* v. *Bailey* (1912), 49 Ind. App. 254, 260, 95 N. E. 341.

. . . . .

" . . . A court of equity here had all of the parties before it for accounting purposes, and it properly determined all the rights of all the parties in one action and thereby avoided a multiplicity of suits. (Citing authorities)."

Reliance by appellant is made upon the case of *Hartlep* v. *Murphy* (1926), 197 Ind. 222, 150 N. E. 312, in which a plea of non est factum was made in a suit on a note and to foreclose a mortgage. However, it is to be noted that the plea of non est factum was made by a surety defendant who did not join in the mortgage, and the court held that issue was separable as to that separate defendant and was triable by jury. That case is to be distinguished from the present one.

In this case, the winding up of the partnership business, the accounting, and the receivership brought the whole matter before the court sitting in equity, and that court should not split the issues presented to it in the main action into law and equity. It should rather retain all of them in equity.

The judgment of the trial court is affirmed.

Jackson, J., dissents with opinion. Myers, J., not participating.

## DISSENTING OPINION

JACKSON, J.—The only question I care to discuss in this dissent is the obvious error of the trial court in its judgment herein.

The finding of facts and conclusions of law entered by the court recited *inter alia* that the contract entered into on May 14, 1954, at page 8, paragraph (11) provided:

"In the event of further development of the oil and gas leases and leasehold estates hereinabove assigned and described, *or any subsequently acquired lease or leases,* as provided in the above paragraph, for the production of oil and gas by drilling new wells, then it is the understanding and agreement that the Assignors and Assignee herein shall share equally in the expense of such subsequent well or wells." [Emphasis supplied]

Paragraph four of such finding recites that Jones Drilling Corporation acquired an oil and gas lease from Higby, as guardian of Harriett Lavanda Higby on certain described real estate, "that pursuant to said paragraph (11) page 8, of said contract and assignment above mentioned, the said Jones Drilling Corporation assigned an undivided one-half working interest in said lease . . . to the said Morris Rotman and Joe Feldman . . . ."

Paragraph five of such finding recites that Jones Drilling Corporation procured an oil and gas lease from Florence G. Ritchey and G. W. Gambill and wife, covering certain real estate therein described. That Jones Drilling Company (sic) assigned to Morris Rotman and Joe Feldman an undivided one-half interest in such lease.

Paragraph eleven of said finding reads as follows:

"That all of the interest of defendants in the oil and gas leases named in said contract dated May 14, 1954, and in *all subsequent acquired leases* pursuant to the terms of said contract, *shall revert to and be owned by plaintiffs* and that all assignments with reference to the oil and gas leases de-

scribed in plaintiffs complaint and *all oil and gas leases afterwards acquired by defendants pursuant to the terms of said original contract and assignments shall be cancelled and declared null and void and that the defendants shall have no interest therein."* [Emphasis supplied.]

Thereafter the court stated its conclusions of law on the facts found, paragraph four of such conclusion reading as follows:

"4. That all the interest of defendants in the oil and gas leases named in said contract, dated May 14, 1954, *and in all subsequent acquired leases* pursuant to the terms of said contract, *shall revert to and be owned by plaintiffs,* and that all assignments with reference to the oil and gas leases described in plaintiffs' complaint *and all oil and gas leases afterwards acquired by defendants pursuant to the terms of said original contract and assignment shall be cancelled and declared null and void and that the defendants shall have no interest therein,* and that the original contract dated May 14, 1954, is hereby cancelled."

Thereafter the court rendered judgment, in pertinent part *inter alia,* as follows:

"It is further ordered, adjudged and decreed by the Court *that all interest of the defendant Jones Drilling Corporation in the oil and gas leases named in said contract, dated May 14, 1954, and all subsequent acquired leases,* pursuant to the terms of said contract, *revert to and does now revert to, and is owned by the plaintiffs in the respective interests owned by the plaintiffs, and further, that defendant, Jones Drilling Corporation has no interest therein."* [Emphasis supplied.]

I point out that the action of the court by its findings that *"all oil and gas leases afterwards acquired by defendants . . . shall be cancelled and declared null and void and that the defendants shall have no interest*

*therein"* [emphasis supplied] goes beyond the issues and parties to this action and attempts to adjudicate rights of third persons not parties to this action.

I further point out that in the after acquired leases, the defendants conveyed a one-half interest in *their leases* to the plaintiffs. The plain language of the judgment is contradictory in that it says the interest of the defendant Jones Drilling Corporation in the after acquired (their) leases shall revert to the plaintiffs. *To revert* to the plaintiffs, they would of necessity have had to be the former owners of the after acquired leases which they were not.

These questions, and others not discussed in this dissent, were properly raised and saved in the motion for new trial and assignment of error by the appellants and were argued in their brief.

The cause should be reversed and remanded to the trial court with instructions to sustain the motion for a new trial.

NOTE.—Reported in 195 N. E. 2d 857.