Joseph J. BIRKENSTOCK and Generose M. Birkenstock, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 80–1099.

United States Court of Appeals, Seventh Circuit.

Submitted March 5, 1981.*

Decided March 16, 1981.**

Joseph W. Weigel, Milwaukee, Wis., for petitioners-appellants.

N. Jerold Cohen, Chief Counsel IRS, M. Carr Ferguson, Asst. Atty. Gen., Michael J. Roach, Atty., Tax Div., Dept. Justice, Washington, D.C., for respondent-appellee.

Before SWYGERT, CUMMINGS and BAUER, Circuit Judges.

PER CURIAM.

Petitioners-appellants, Joseph J. and Generose M. Birkenstock, appeal from the decision of the United States Tax Court rejecting their contention that they are lawfully entitled to reduce their gross income to its alleged gold value for purposes of reporting their taxable income and finding them liable for a deficiency in income tax of $8,220.60 for the taxable year 1974. We affirm.

I

The case was submitted to the Tax Court upon a Stipulation of Facts. According to the stipulation, the taxpayers, husband and wife, filed a joint federal income tax return for the year 1974. On this return, they showed receipt of $35,184.82 in paper dollars or Federal Reserve Notes, which they referred to as Pseudo Dollars. This figure was converted to $9,316.42 in "real," "statutory," or "standard" dollars, by using a formula which supposedly reflected the actual value of gold represented by the American dollar. The precise computation was as follows:

| Step | Conversion |
|---|---|
| 1 | $1.00 = 1/42.22 ounce of gold. |
| 2 | $42.22 = 1 ounce of gold. |

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

** This appeal was originally decided by unreported order on March 16, 1981. *See* Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

3  $159.45 is the alleged average price of 1 ounce of gold in the Daily (London) Gold Price Final Fixing 1974 for the 52 petitioners' weekly paydays during the year 1974, per attachment to return.

4  $35,184.82 (taxable income) x $42.22/1 ounce of gold x 1 ounce of gold/$159.45 = taxable income in its alleged gold value.

5  $35,184.82 x $42.22/$159.45 = $9,316.42 taxable income converted into its alleged gold value or, in petitioners' nomenclature, "(S$)9,316.42 statutory dollars."

Taxpayers then computed their income tax liability upon the $9,316.42 figure.

The Commissioner determined that the correct figure to be reported as taxpayers' taxable income was $35,184.82 (rounded to $35,185.00) and computed their tax on this amount to be $8,220.60. Taxpayers thereafter petitioned the Tax Court to redetermine the deficiency asserted by the Commissioner. On motion for summary judgment, the Tax Court concluded that the Commissioner's computation was correct and entered its decision accordingly.

## II

Our research confirms the Commissioner's contention that this case is but one "in a seemingly endless series of tax cases challenging the federal monetary system." (Brief for Appellee, p. 3.) *See, e. g., Mathes v. Commissioner,* 576 F.2d 70 (5th Cir. 1978), cert. denied, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979); *United States v. Schmitz,* 542 F.2d 782 (9th Cir. 1976), cert. denied, 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Wangrud,* 533 F.2d 495 (9th Cir. 1976), cert. denied, 429 U.S. 818, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Gardiner,* 531 F.2d 953 (9th Cir. 1976), cert. denied, 429

U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976); *United States v. Hurd,* 549 F.2d 118 (9th Cir. 1977); *United States v. Rifen,* 577 F.2d 1111 (8th Cir. 1978); *Nyhus v. Commissioner,* 594 F.2d 1213 (8th Cir. 1979); and *United States v. Daly,* 481 F.2d 28 (8th Cir. 1973), cert. denied, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). Like other courts that have confronted such challenges, we find the taxpayers' claim wholly lacking in merit.

Taxpayers base their claim on the Par Value Modification Act, P.L. 92–268, 86 Stat. 116 (31 U.S.C. § 449), which established a new par value of the dollar in terms of gold such that forty-two and two-ninths dollars would equal one fine troy ounce of gold.[1] Applying this standard to their 1974 taxable income in paper dollars and comparing it to the average market price of gold for the year 1974, they conclude that their real income was only $9,316.42.

Taxpayers are clearly mistaken in their understanding of the Par Value Modification Act. By its express terms, the standard established by that Act is to be used "for the purpose of issuing gold certificates pursuant to section 405b of [Title 31]." There is no indication that it is further intended as a measure of the "actual value" of the dollar in this country. Here, Federal Reserve notes, not gold, have been declared "legal tender for all debts, public and private, public charges, taxes, duties, and dues." 31 U.S.C. § 392. The market price of gold in terms of dollars is therefore irrelevant to the determination of the taxpayers 1974 taxable income.

Rejecting this same argument in *Mathes v. Commissioner, supra,* the Fifth Circuit stated:

> Congress has delegated the power to establish this national currency which is lawful money to the Federal Reserve Sys-

---

1.  The Par Value Modification Act provides:

    The Secretary of the Treasury is hereby authorized and directed to take the steps necessary to establish a new par value of the dollar of $1 equals 0.828948 Special Drawing Right or, the equivalent in terms of gold, of

forty-two and two-ninths dollars per fine troy ounce of gold. When established such par value shall be the legal standard for defining the relationship of the dollar to gold for the purpose of issuing gold certificates pursuant to section 405b of this title.

tem. 12 U.S.C. § 411. Congress has made the Federal Reserve note the measure of value in our monetary system, 12 U.S.C. § 412 (1968) and has defined Federal Reserve notes as legal tender for taxes, 31 U.S.C. § 392 (1965). Taxpayer's attempt to devalue the Federal Reserve notes they received as income is, therefore, not lawful under the laws of the United States.

576 F.2d at 71 (footnote omitted).

In *Bates v. United States*, 108 F.2d 407 (7th Cir. 1939), *cert. denied*, 309 U.S. 666, 60 S.Ct. 591, 84 L.Ed. 1013 (1940), this court confronted this issue in a slightly different context. There the taxpayer claimed that, despite a difference of over $40,000 in the purchase price and subsequent selling price of certain securities, he failed to realize any taxable gain from the transaction because of the intervening change in the statutory gold content of the dollar. Comparison of the value of the dollars used to purchase the securities with that received for their sale, he argued, revealed that no gain had in fact been realized. This court found the taxpayer's contention contrary to established law:

> We are of the opinion that judicial decisions and statutory enactments neither recognize, nor, by implication, attach any significance to the statutory gold content of the dollar as a factor in the determination of gain from the sale of capital assets. The standard unit of computation is the money dollar, an abstract or ideal unit of account. This standard unit of money has not changed in money value throughout the existence of our monetary system. There have been changes from time to time in the form of the physical representatives of money, but lawful money in the United States has been the same since the Act of Congress of April 2, 1792, provided that "The money of account of the United States shall be expressed in dollars or units, dimes or tenths, cents or hundredths, and mills or thousandths, a dime being the tenth part of a dollar, a cent the hundredth part of a dollar, a mill the thousandth part of a dollar * * *."

108 F.2d at 408 (footnote omitted).

The same reasoning applies here. The measure of the taxpayers' taxable income is in dollars, and the par value of the dollar in gold for the issuance of gold certificates is not a factor in the determination of their income. For this reason, the decision of the Tax Court is affirmed.