Ronnie L.R. NIXON, Plaintiff,

v.

Mark J. PHILLIPOFF, Donald D. Martin and Kendall I. Vail, Defendants.

Civ. No. S 85–177.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 6, 1985.

Ronnie L.R. Nixon, pro se.

Mark J. Phillipoff, Jones, Obenchain, Johnson, Ford, Pankow & Lewis, South Bend, Ind., for Phillipoff.

Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, Ind., for Martin.

William J. Boklund, LaPorte, Ind., for Vail.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on motions to dismiss filed by all of the defendants in this cause. For the following reasons, the motions to dismiss will be granted.

■ Plaintiff is proceeding *pro se. Pro se* pleadings are to be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The district court's role is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984); *Caruth v. Pinkney,* 683 F.2d 1044, 1050 (7th Cir. 1982). This court also recognizes that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* motions and complaints such as the plaintiff's are held to less stringent pleading requirements; rigor in the examination of such motions, complaints and pleadings is inappropriate.

This cause arises out of a dispute in an underlying mortgage foreclosure action in the LaPorte Superior Court of LaPorte County, Indiana. Defendant Phillipoff filed the case with defendant Vail, the clerk of the court, and paid the filing fee in federal reserve notes. The case came before defendant Martin, who is a LaPorte Superior Court judge.

Plaintiff ("Nixon") moved for dismissal of the case on three grounds: (1) that Phillipoff had violated article 1, section 10, clause 1 of the United States Constitution by paying the filing fee with federal reserve notes instead of "lawful money" (i.e., gold and silver coin); (2) that Nixon was entitled to a jury trial, and Martin lacked jurisdiction to determine whether Nixon was entitled to a jury trial; and (3) the LaPorte Superior Court lacked jurisdiction to hear the case because a federal land patent was involved. Judge Martin denied

the motion to dismiss, and this suit followed.

Nixon sues under 42 U.S.C. §§ 1983, 1985 and 1986, asserting that the cause of action arises under article 1, § 10, cl. 1, article 3, § 2, cl. 3, article 6, §§ 2 and 3, and the first, fifth, sixth, ninth, tenth and fourteenth amendments. Nixon alleges that Phillipoff violated his oath to uphold the constitution by "making a thing other than gold and silver coin a tender in payment of debt, to wit; making false and counterfeit notes a tender in payment of filing fees assessed by the authority and for the use of the state," as well as "conspiring" with Martin to have the Superior Court take jurisdiction of the foreclosure suit. Nixon asserts that Vail violated article 1, § 10 by "receiv[ing] false tokens, to wit; Federal Reserve Notes, giv[ing] false receipts, mak[ing] false documents knowing the same to contain false statements; and makeing (sic) false entries in order to cover up material facts." Nixon sues Judge Martin for his allegedly erroneous rulings concerning his jurisdiction over the foreclosure action.

### Motions to Dismiss

The defendants have filed motions to dismiss. Although denominated as motions to dismiss, it is clear that the issues presented by these motions are best addressed after reference is made to the exhibits, pleadings, and other matters of record in this case. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* F.R.Civ.P. 12(b).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.,* 549 F.2d 92 (7th Cir.1977). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union,* 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1983). *See generally* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1984).

Stripped to its bare essentials, Nixon's suit is premised on three propositions: (1) that only specie (that is, gold and silver coin) are legal tender for purposes of paying a filing fee; (2) that Nixon's "land patent" divested the LaPorte Superior Court of jurisdiction to hear the mortgage foreclosure case; and (3) that Nixon was entitled to a trial by jury in the foreclosure action. The claims against the individuals flow from these claims. Phillipoff has allegedly violated the constitution by "making false and counterfeit notes a tender in payment of filing fees" and by conspiring with Martin to have the Superior Court take jurisdiction despite the tender of federal reserve notes, while Vail allegedly violated the constitution by accepting the notes as payment for the filing fee. For

both claims to succeed, proposition (1) must be true. Likewise, the claims against Martin can succeed only if propositions (2) and (3) are true. The converse of this analysis is that, if all three propositions are false, then the actions of the defendants were legally and constitutionally proper. Therefore, instead of analyzing Nixon's claims in terms of elements of a claim under 42 U.S.C. §§ 1983, 1985, 1986, the court will examine these underlying premises each in turn.

*Federal Reserve Notes as Legal Tender*

■ Article 1, section 8, clause 5 of the Constitution gives Congress the authority "[t]o coin Money, and regulate the Value thereof...." This clause gives Congress the exclusive ability to determine what will be legal tender throughout the country. *The Legal Tender Cases*, 110 U.S. 421, 446, 4 S.Ct. 122, 128–29, 28 L.Ed. 204 (1884); *Veazie Bank v. Fenno*, 76 U.S. (8 Wall.) 533, 548, 19 L.Ed. 482, 488 (1869); *United States v. Rifen*, 577 F.2d 1111, 1113 (8th Cir.1978). Pursuant to that authority, Congress has declared that

> United States coins and currency (*including Federal reserve notes* and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts.

31 U.S.C. § 5103 (1984) (emphasis supplied). It is therefore clear that federal reserve notes are legal tender for any debt or public charge.

Nixon's argument is based on article 1, § 10, clause 1, which mandates that "No State shall ... make anything but gold and silver Coin a Tender in Payment of Debts...." Nixon asserts that this provision requires a state to accept and recognize only *gold* and *silver* coin as legal tender. The argument fails for several reasons.

First, Nixon's interpretation of article 1, § 10 creates a rather curious inconsistency with article 1, § 8, clause 5. If states can only recognize gold and silver coin as legal tender, then Congress does not have complete power to declare what shall constitute legal tender for payment of all debts, for a declaration that a treasury note or federal reserve note was legal tender would fly in the face of the restriction of § 10. While this is the conclusion which Nixon wants this court to reach (in effect declaring federal reserve notes illegal), it flies in the face of the clear import of § 8, clause 5's unrestricted language. The power to coin money necessarily carries with it the power to declare what is money, and the constitution does not limit Congress to gold and silver coin. Section 8 sets forth the powers of Congress, while § 10 imposes a restriction on the states. It strains logic and constitutional interpretation to claim that the framers of the constitution sought to limit Congress' power to coin money via an implication derived from a restriction directed not at Congress but at the states.

■ This strain in logic suggests the second reason for the failure of Nixon's argument: Nixon has misinterpreted the import of § 10's prohibition. Courts have uniformly interpreted § 10 as prohibiting states from declaring anything other than gold or silver coin as legal tender, *The Legal Tender Cases*, 110 U.S. at 446, 4 S.Ct. at 129; *Rifen*, 577 F.2d at 1113; yet these cases do not interpret § 10 as requiring states to accept only gold and silver coin as tender, nor could they, as they both recognize the unrestricted power of Congress to declare what shall constitute legal tender, including bills of credit, treasury notes, and federal reserve notes. In short, § 10 acts only to remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender. Thus, the states must abide by the dictates of Congress, and because 31 U.S.C. § 5103 declares that federal reserve notes as legal tender, the states are constitutionally compelled to accept them as legal tender.[1]

1. In various filings, Nixon also makes reference to article 11, §§ 3 and 7 of the Indiana Constitu-

■ Other reasons compel rejection of Nixon's position. Numerous courts have recognized that federal reserve notes are legal tender. *See Birkenstock v. Commissioner of Internal Revenue,* 646 F.2d 1185, 1186 (7th Cir.1981); *United States v. Rickman,* 638 F.2d 182, 184 (10th Cir.1980); *United States v. Ware,* 608 F.2d 400, 402–04 (10th Cir.1979); *Rifen,* 577 F.2d at 1112–13; *United States v. Schmitz,* 542 F.2d 782 (9th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Wangrud,* 533 F.2d 495 (9th Cir.), *cert. denied,* 429 U.S. 818, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Daly,* 481 F.2d 28 (8th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). In fact, there appears to be no cases since *The Legal Tender Cases* which undermine this conclusion. Such extensive and long-standing precedent offers a formidable justification for the eminently sensible conclusion that using or accepting federal reserve notes as payment for state court filing fees is completely proper under the constitution.

In short, Nixon's position is illogical and flies in the face of established precedent. The premise underlying the claims against Phillipoff and Vail concerning the type of legal tender for court filing fees is clearly and obviously false. Therefore, the motions to dismiss the claims against Phillipoff and Vail will be granted.

### "Land Patents" and State Court Jurisdiction

■ The premise underlying one of Nixon's claims against Martin is that Judge Martin should have dismissed the state foreclosure action because a federal land patent was involved. This court has considered Nixon's land patent and found it to be a frivolous legal nullity that did not and could not affect the title to the mortgaged land at issue in the underlying foreclosure action. *Nixon v. Individual Head of the St. Joseph Mortgage Co.,* 612 F.Supp. 253 (N.Ind.1985). This court specifically found that it did not have jurisdiction over this dispute by virtue of the "land patent," so that the assumption behind Nixon's motion to dismiss the foreclosure action (that disputes about title involving a land patent must be brought in federal court) is incorrect. Judge Martin acted properly in denying Nixon's motion to dismiss, so that he cannot be held liable here for failing to heed Nixon's spurious arguments. The motion to dismiss this claim against Martin will be granted.

### Trial by Jury

■ The final claim against Martin is that he failed to give Nixon a trial by jury in the foreclosure action. The premise underlying the argument is that Nixon was entitled to a jury trial by virtue of the seventh amendment. That amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved...." By its very terms, the amendment does not grant a right to a jury trial in all cases; it grants the right only in "suits at common law." The Supreme Court has stated that

tion. Yet it is impossible to see how these sections would indict the defendants' actions. Section 3 provides that

> If the General Assembly shall enact a general banking law, such law shall provide for the registry and countersigning, by an officer of State, of all paper credit designed to be circulated as money' and ample collateral security, readily convertible into specie, for the redemption of the same in gold and silver....

Section 7 requires that "all bills or notes issued as money shall be, at all times, redeemable in gold and silver...." Neither of these sections are implicated here. Section 3 applies *only if* the state General Assembly passes a banking law

and issues paper money. It dovetails with the article 1, § 10 restriction discussed above in that § 10 removes state power to declare paper money as currency, so that § 3's requirement of conversion into gold and silver satisfies § 10. Section 7 is likewise directed to state-issued paper money. Yet state-issued paper money is not at issue here—*federal* paper money is. It would be a perversion of constitutional principles to believe that a section in a state constitution could somehow limit Congress' power under article 1, § 8 to declare what shall constitute legal tender by requiring that it be convertible into specie.

by common law, [the framers of the amendment] meant ... not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered ... In a just sense, the amendment, then, may well be construed to embrace all suits *which are not of equity and admiralty jurisdiction....*

*Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007–08, 39 L.Ed.2d 260 (1974) (emphasis added). *See also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). In short, the amendment requires a court to look to the traditional distinctions between law and equity in determining whether a claim is "legal" in nature so as to justify invoking the seventh amendment. *See Ross v. Bernard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). If the claim is equitable, then no right to a jury trial exists.

 Under Indiana law, a mortgage foreclosure proceeding is equitable in nature. *Carmichael v. Adams*, 91 Ind. 526 (1883); *Berkemeier v. Rushville National Bank*, 459 N.E.2d 1194, 1197 (Ind.App. 1984); *Farmers Bank and Trust Co. v. Ross*, 401 N.E.2d 74 (Ind.App.1980). In addition, if a claim is essentially equitable, the presence of a legal issue (such as a counterclaim) is not sufficient to invoke the right to a jury trial; the case must be tried in equity. *Jones Drilling Corp. v. Rotman*, 245 Ind. 10, 195 N.E.2d 857 (1964); *Fish v. Prudential Ins. Co. of America*, 225 Ind. 448, 75 N.E.2d 57 (1947); *Berkemeier. See* Indiana Trial Rule 38. Thus, under the seventh amendment as interpreted by the Supreme Court, Nixon was not entitled to a jury trial in the foreclosure proceeding because that proceeding was equitable in nature. Judge Martin was correct in denying Nixon's motion to dismiss, and thus his actions cannot be the basis of a claim against him.

In summary, Nixon's suit is based on three faulty premises concerning the law, and when the correct interpretation of the law is applied, none of the claims asserted here have any viability. The motions to dismiss will therefore be granted.

*Motion for Attorney Fees*

Defendant Phillipoff has moved for an award of attorney's fees as a sanction against Nixon for filing this lawsuit. The court interprets this motion as a motion under Rule 11 of the Federal Rules of Civil Procedure and under the equitable powers of this court.

 The American Rule is that absent specific statutory or other expressed authorization, attorney fees are not recoverable by the prevailing party in a lawsuit. *International Union v. J. Pease Construction Co.*, 541 F.Supp. 1334, 1337 (N.D.Ill.1982). An exception to this rule has been recognized where a losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975). *See McCandless v. Great Atlantic and Pacific Tea Co.*, 697 F.2d 198 (7th Cir.1983).

 The Seventh Circuit has made clear that bad faith can include the pursuit of meritless suits. In *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), the court held that insistence on litigating a question in the face of controlling precedents which removed every colorable basis in law for the litigant's position amounted to bad faith justifying an award of fees. *Id.* at 1269–70. In *Reid v. United States*, 715 F.2d 1148 (7th Cir.1983), the Seventh Circuit stated that "the law may be so clear and well established that persistence in a course of litigation could be evidence of bad faith." *Id.* at 1154. Thus, this court has sufficient equitable power to assess sanctions for fees and costs if it finds that plaintiff's claim is meritless and in bad faith. *See Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 828 (7th

Cir.1984); *Benner v. Negley,* 725 F.2d 446, 449 (7th Cir.1984).

■■■ A second source of power to impose sanctions is found in the Federal Rules of Civil Procedure. Rule 11, which governs the signing of pleadings and motions, requires that each pleading or motion be signed by an attorney or the party (if the party is proceeding *pro se* ). The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

The Notes of the Advisory Committee on the Federal Rules makes it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." The rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), can be taken into account.

The core of Rule 11 is that the signature on the pleading certifies that "to the best of his knowledge, information and belief *formed after reasonable inquiry* it [the pleading, motion or paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . ." (emphasis added). What is important to note is that this language requires more

than just a belief that the law is or should be a certain way; as the Advisory Committee states, "what constitutes a reasonable inquiry may depend on . . . whether the pleading, motion, or other paper was based on a plausible view of the law," and is thus a "more stringent" standard than good faith.

The Seventh Circuit has made it clear that it now applies an objective standard to the determination of bad faith in motions for fees. *See Glick v. Koenig,* 766 F.2d 265, 270 (7th Cir.1985). With these principles in mind, the court now turns to the issues raised in this case.

■■■ Nixon has argued the article 1, § 10 issue about the illegality of federal reserve notes quite strenuously. He did so despite a nearly one hundred year old unbroken lines of cases which indicate that federal reserve notes (or paper money in general) can be declared legal tender. This is the kind of insistence on litigating a question in the face of controlling precedent which amounts to bad faith. In addition, this failure to discover such overwhelming precedent suggests a lack of reasonable inquiry into the law as required by Rule 11.

This court has previously found that Nixon's claims concerning his purported "land patent" were legally incorrect and frivolous, and deserving of Rule 11 sanctions. *Nixon v. The Individual Head of St. Joseph Mortgage Co.,* 612 F.Supp. 253 (N.Ind. 1985). The court notes this prior decision for the purpose of indicating that the second premise of the lawsuit was also litigated in bad faith.

The third and final premise of Nixon's suit concerns the right to a jury trial. While Supreme Court doctrine on the issue has been somewhat obtuse, it is clear under Indiana law that mortgage foreclosure actions are equitable in nature, and thus not deserving of a jury trial. Nixon's filing of this lawsuit in light of such clear precedent is the type of bad faith litigation which the Seventh Circuit finds deserving of sanctions.

Other facts in this case buttress the conclusion that Nixon's suit was brought in bad faith. The record is replete with motions and strange filings of record that obfuscate the issues presented here. Nixon filed a Lis Pendens to encumber the property of the defendants; a "writ of mandate" demanding that Judge Martin vacate the judgment in the foreclosure action; and a "bill of information caveat and notice" to the local sheriff explaining that Martin's refusal to grant a trial by jury was unconstitutional and therefore the trial was void, thereby justifying his refusal to obey the court's orders. Nixon filed requests for admissions which sought admissions on such propositions as: "The 16th Amendment in common law means the same in merchant law"; "the law merchant is subject to the negative aspects and summary judgments of the lex mercatoria which operates as a state granted privilege or franchise" (Request for Admissions to Martin, April 10, 1985); "You studied the United States Constitution in High School"; "You can read." (Second Request for Admissions to Vail, May 28, 1985). Despite the wide latitude given discovery in the federal courts, these requests seek totally irrelevant information, and suggest of attempts to prolong this suit (and thus to block the execution of the foreclosure judgment by virtue of this suit's continuing legal cloud over it) and harass the defendants.

Perhaps the most egregious act was Nixon's filing of a thirty-four page "Memorandum of Law." The Memorandum was obviously not written by Nixon—the type is different from all other filings in this case, and more revealing, was written for a "Defendant", not a plaintiff such as Nixon. The Memorandum spends twenty pages reciting the holdings of cases decided prior to *The Legal Tender Cases*, but few (if any) cases after. It rails against the Federal Reserve System as some kind of private corporation, and concludes by calling for a metallic currency. It may act as a policy statement for some ghost writer who seeks to change Congress' view of what is legal tender, but it is hardly a memorandum of law on any issues pertinent to this case. It is but one more attempt to force this court to waste precious judicial resources while examining irrelevant and spurious arguments. Even in light of *Haines v. Kerner*, which requires that this court recognize the difficulties of a *pro se* litigant, this lawsuit and Nixon's actions are dilatory, frivolous, and an attempt to harass the defendants. Such conduct is bad faith justifying an award of attorney's fees. *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985).

Examination of the court file in this case reveals over twenty-six motions, affidavits, notices, requests for admissions and memoranda of law filed by Nixon. These filings required the attorneys for each defendant to read, analyze, and respond to these filings. Each of these tasks required counsel to expend significant amounts of time to develop intelligent responses. In addition, counsel had to attend two conferences on this case, one in person in Fort Wayne, and one by phone. A very conservative estimate of the fees incurred in dealing with this frivolous lawsuit is seven hundred fifty dollars ($750.00) per defendant. The court will therefore award such an amount to each defendant under Rule 11.

The burden on this court in dealing with Nixon's numerous filings, and the responsive filings of each defendant is as great as that on defense counsel. The docket sheet in this case indicates no less than 82 different entries reflecting filings received and docketed by the court and other actions required by the court or its employees. This suit has forced a significant expenditure of judicial resources in order to fairly deal with a groundless claim. Certainly an "appropriate sanction" under Rule 11 can include a fine payable to the Clerk of this court. The court finds that a fine of five hundred dollars ($500.00) is an appropriate and justified sanction under Rule 11.

This opinion stands as public notice that this court will not tolerate baseless claims about the currency system or about the recognition of legal tender. Such suits will invoke Rule 11 sanctions just as surely as Nixon's suit did here.

For the above stated reasons, the motions to dismiss are hereby GRANTED, and this cause is hereby DISMISSED in its entirety. Plaintiff is hereby ORDERED to pay each defendant seven hundred fifty dollars ($750.00) in attorney's fees as a Rule 11 sanction for filing this lawsuit. In addition, plaintiff is also hereby ORDERED to pay a fine of five hundred dollars ($500.00) to the Clerk of this court as an additional Rule 11 sanction.