51 F.3d 267
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Reginold POUNCY, Plaintiff-Appellant,
v.
FIRST VIRGINIA MORTGAGE COMPANY; P. Thomas May, Jr.; Bill
Geilher, Jr.; Justin C. O'Donnell; William S. Cornish;
Darrell F. Armstrong; James P. Balchinski; Richard F.
Bowman; Dan Smith; Harry Allen; Susan W. Skiles; Mark
Copenhaver; Richard Lower; Thomas P. Jennings, Defendants-Appellees.
 No. 94-2086.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 15, 1995.
Decided: April 3, 1995.
 
 Reginold Pouncy, Appellant Pro Se. Kathleen Thorne Barlow, Falls Church, VA, for Appellees.
 Before RUSSELL and WILLIAMS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Reginold Pouncy appeals the district court's order dismissing his pro se complaint brought against the First Virginia Mortgage Corporation (First Virginia), First Virginia Bank (FVB), and several officers and employees thereof, charging Defendants with violations of the Constitution, the Uniform Commercial Code, various federal statutes, and Virginia contract and tort law. Pouncy also appeals the district court's denial of his Motion for Judgment of Default, at Law; for Lack of Answer, and his Motion for Common Law Hearing on Defendants' Motion to Dismiss. Finding no colorable legal basis to any of Pouncy's claims, we affirm.
 
 
 2
 On May 11, 1973, Pouncy obtained a first deed of trust loan for $20,750 from First Virginia, securing a piece of real property located in Manassas, Virginia. For twenty years, Pouncy made monthly payments on the loan. In December of 1993, Pouncy sought to pay off the balance on the loan, roughly $13,000, with a money order issued by a private party, W.D. McCall Associates (McCall), with a mailing address in Waxahachie, Texas. Pouncy told First Virginia to mail the private money order to McCall for payment.
 
 
 3
 First Virginia submitted the McCall money order through the Federal Reserve System. It was returned to First Virginia, as having "no authorized presentment point." First Virginia then mailed the money order to McCall, and received in return a "Certified Bankers Cheque," also issued by McCall, for an amount less than that of the money order. The bankers check was not, in fact, drawn on a bank, and was not collectible through the Federal Reserve.
 
 
 4
 On February 7, 1994, First Virginia gave written notice to Pouncy that neither the money order nor the bankers check were appropriate forms of payment. Moreover, the Mortgage Bankers Association had advised First Virginia that other lenders had presented identical money orders to McCall, and had been denied payment. Finally, First Virginia told Pouncy that the bankers check would not be accepted through normal banking channels. Pouncy, however, asserted that he had paid off the loan, and that First Virginia was unlawfully withholding satisfaction of the deed of trust note.
 
 
 5
 After Pouncy's loan was in default for several months, First Virginia gave foreclosure notice to Pouncy. Pouncy, however, refused to make additional payments. On May 4, 1994, the property was foreclosed.
 
 
 6
 Pouncy filed a pro se complaint on April 11, 1994, attempting to enjoin the scheduled foreclosure. On May 5, 1994, Pouncy filed an ex parte request for a temporary restraining order (TRO). The district court issued an order finding that the TRO motion could not be heard, because the foreclosure had already occurred. Thereafter, Pouncy withdrew his request for a preliminary injunction, and filed an amended complaint, identical in substance to his original complaint.
 
 
 7
 Pouncy's complaint contained two basic threads. First, Pouncy accused First Virginia of issuing a check to Pouncy backed only by Federal Reserve notes, and not by gold or silver reserves, in violation of U.S. Const. art. I, Sec. 10. Pouncy maintained that Federal Reserve notes are not lawful money of the United States, and that he was induced into executing the original deed of trust by First Virginia's false statement that it would lend him $20,750 "in lawful money of the United States per 31 U.S.C. Sec. 5101."[1] He charged First Virginia with an array of fraud claims, breach of "quasi-oral contract," and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. Sec. 1964(c) (West 1984 & Supp.1994), the Fair Debt Collection Act, 15 U.S.C. Sec. 1692k (1988), and other federal laws. He contended, ultimately, that the deed of trust upon which First Virginia foreclosed was void because of First Virginia's failure to provide the promised consideration--lawful money--for Pouncy's note and deed of trust.
 
 
 8
 The second thread of Pouncy's complaint faulted First Virginia's refusal to accept the McCall money order or bankers check as payment in full of Pouncy's loan balance. Pouncy's theory appears to be that because Federal Reserve notes are mere promises to pay money, and are not legal tender, his payment to First Virginia of the private money order and bankers check was "payment of like kind" for the loan check that he received from First Virginia.
 
 
 9
 Pouncy alleged that the refusal by First Virginia to accept the tendered payment violated several provisions of the Uniform Commercial Code. He asserted that his debt was paid in full, and that the foreclosure on the deed of trust was unlawful under the Fair Debt Collection Act. Finally, he alleged that Defendants "knowingly made false statements to current renters of [the foreclosed] property, and various credit bureaus defaming my character, [and] preventing me from obtaining loans from other financial institutions." Although Pouncy does not explain what allegedly defamatory statements were made, we assume that he is referring to First Virginia's publication of the notice of foreclosure to Pouncy's creditors and to the person residing at the property in question.
 
 
 10
 Defendants filed a motion to dismiss, asserting that Pouncy's complaint failed to state a cause of action. Fed.R.Civ.P. 12(b)(6). In response, Pouncy filed a Motion for Judgment of Default, seeking a judgment because Defendants had not filed an answer to his complaint. Next, Pouncy filed a Motion for Common Law Hearing, demanding a jury trial on the Defendants' motion to dismiss.
 
 
 11
 The district court issued an order denying Pouncy's motions, granting Defendants' motion, and dismissing Pouncy's complaint. Pouncy filed a timely notice of appeal.
 
 
 12
 Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is appropriate where, construing the allegations in the light most favorable to the plaintiff and assuming the facts alleged in the complaint are true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). We review a district court's Rule 12(b)(6) dismissal de novo. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989).
 
 
 13
 We find that Pouncy fails to state any claim against Defendants, because his entire complaint is based upon two utterly specious propositions: (1) that Federal Reserve notes are not legal tender; and (2) that a privately drafted money order or check constitutes valid tender of payment for his debt.
 
 
 14
 Congress, in full accordance with its authority under article I, section 8, clause 5 of the Constitution, has established that Federal Reserve notes are legal tender. 31 U.S.C. Sec. 5103 (1988); see Birkenstock v. Commissioner, 646 F.2d 1185, 1186 (7th Cir.1981); United States v. Rickman, 638 F.2d 182, 184 (10th Cir.1980); Mathes v. Commissioner, 576 F.2d 70, 71 (5th Cir.1978), cert. denied, 440 U.S. 911 (1979); Nixon v. Phillipoff, 615 F.Supp. 890, 893 (N.D. Ind.1985), aff'd without op., 787 F.2d 596 (7th Cir.1986); see also Juillard v. Greenman, 110 U.S. 421, 449 (1884). Therefore, Pouncy's claims of fraud, breach of contract, RICO violations, and mail fraud, among others, which hinge upon his belief that Federal Reserve notes are not money, are clearly baseless under any conceivable set of facts.
 
 
 15
 Pouncy's contention that a private party's money order or check must be accepted as payment for a debt is incontrovertibly false. We reject as frivolous Pouncy's position that an individual can simply fill out a piece of paper, label it a "certified money order" or "certified bankers cheque," and present it to a lender in full satisfaction of a debt. Nor can Pouncy discharge his obligation to First Virginia by unilaterally substituting another debtor, McCall, in his place. Because neither the money order nor the bankers check was convertible into money, we find no legal basis for Pouncy's claims against Defendants which depend upon his full payment of his debt.
 
 
 16
 We agree with the district court that Pouncy's complaint fails to state a claim, and should be dismissed under Fed.R.Civ.P. 12(b)(6). We find further that the district court properly denied Pouncy's Motion for Default Judgment and Motion for Common Law Hearing.[2] Accordingly, we affirm the district court's order in toto. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 "United States money is expressed in dollars, dimes or tenths, cents or hundredths, and mills or thousandths. A dime is a tenth of a dollar, a cent is a hundredth of a dollar, and a mill is a thousandth of a dollar." 31 U.S.C. Sec. 5101 (1988)
 
 
 [2]
 Pouncy's Motion for Default Judgment cites Defendants' failure to file an answer as grounds for judgment. Because Defendants' Rule 12(b)(6) motion was pending in the district court, no answer was yet due. Fed.R.Civ.P. 12(a)(4)(A)
 In his Motion for Common Law Hearing, Pouncy sought a jury trial for Defendants's Motion to Dismiss. Because a ruling on a Rule 12(b)(6) motion involves only questions of law, there is no role for a factfinder at this stage of the litigation. Therefore, the district court's denial of Pouncy's motion was proper.