**CLACKAMAS COUNTY, OREGON,**
Appellant,

v.

**Douglas McKAY, Secretary of the Interior, et al., Appellees.**

No. 12533.

United States Court of Appeals
District of Columbia Circuit.

Argued June 1, 1955.

Decided July 28, 1955.

---

344

Mr. L. Eugene Crampton, Oswego, Ore., of the bar of the Supreme Court of Oregon, *pro hac vice*, by special leave of Court, with whom Messrs. A. W. Lafferty, Portland, Ore., Richard L. Merrick and Byron N. Scott, Washington, D. C., were on the brief, for appellant.

Mr. Harold S. Harrison, Atty., Department of Justice, with whom Mr. Roger P. Marquis, Atty., Department of Justice, was on the brief, for appellees. Mr. Leo A. Rover, U. S. Atty., and Mr. Lewis Carroll, Asst. U. S. Atty., also entered appearances for appellees.

Before EDGERTON, Chief Judge, and PRETTYMAN and WILBUR K. MILLER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This case is a sequel to one decided by this court in 1954.[1] It is unnecessary to repeat the long and involved background to the litigation. Our decision was promulgated April 30, 1954. Subsequently, on June 24, 1954, the President approved an Act of Congress dealing with the subject matter. That Act[2] declared that (1) all the unselected and

1. Clackamas County, Or. v. McKay, 108 U.S.App.D.C. 94, 219 F.2d 479, judg-

ment vacated as moot, 349 U.S. 909, 75 S.Ct. 599 (1955).

2. 68 Stat. 270, 43 U.S.C.A. §§ 1181g–1181j.

unpatented odd-numbered sections within the indemnity grants of the Oregon and California Railroad, and included within the boundaries of national forests, are revested railroad grant lands; (2) such lands shall be administered by the Secretary of Agriculture; and (3) all revenues derived from the lands shall be disposed of according to the Act of August 28, 1937.[3] The new statute was in no way inconsistent with the decision of the court but settled an interdepartmental dispute as to administrative authority over the lands, a question we did not attempt to determine.[4]

Clackamas County strenuously objects to the transfer of the lands from the Department of the Interior to the Department of Agriculture. It claims a vested right, derived from what it says were the retained sovereign rights of Oregon at the time of its admission into the Union as a State. It reasons that before admission Oregon was sovereign over all the lands within its borders; that when the United States granted the lands to the railroad they were thereby returned to the sovereign overrule of the State of Oregon; and that when the Supreme Court declared against the forfeiture[5] it solidified that sovereign authority. It says the Department of the Interior holds the lands in trust or in receivership for Oregon. It says the 1916[6] and 1937[7] Acts of Congress were "compacts" with Oregon, upon which that State relied in her plans for development. It says the transfer of lands to the Department of Agriculture threatens a reduction in income to it from the lands. It says, therefore, the Act of 1954 is a taking without compensation or due process.

The basic difficulty with the argument is that it confuses sovereign authority over lands within the borders of a sovereignty with the ownership of such lands. Our problem deals with ownership. These lands are clearly property of the United States. At all times since the admission of Oregon to the Union they have been either property of the United States or property of the railroad. The interest of Oregon was in the attraction of settlers to the lands and the placement of the lands on the tax rolls. When the lands revested in the United States[8] Congress provided for the payments from the revenues as a means of meeting the tremendous disappointment and loss suffered by Oregon, but the provision was by way of meeting a moral or ethical obligation rather than a legal one.

 When the United States acquires, by eminent domain or otherwise, a tract of land in a State, it becomes the owner, and thereafter disposition is within the unfettered discretion of the Congress. No overriding sovereign governmental authority of the State impinges upon that discretion or gives rise to power on the part of courts to interfere with that disposition. Such is the case at bar.

 In ultimate analysis the County complains of a threat of damage which it fears, rather than an actual injury. But in any event the public domain in Oregon passed to the United States when Oregon was admitted. Such a provision was implicit in the Act of admission.[9] The 1916 and 1937 Acts of the Congress were in no sense compacts but were statutes relating to disposition of federal public property. No taking is involved

---

3. 50 Stat. 874.

4. Supra note 1, 94 U.S.App.D.C. at 127, 219 F.2d at 498 (On Petition for Rehearing).

5. Oregon & C. R. Co. v. United States, 238 U.S. 393, 35 S.Ct. 908, 59 L.Ed. 1360 (1915).

6. Act of June 9, 1916, 39 Stat. 218.

7. Supra note 3.

8. Act of June 9, 1916, as amended by Act of Aug. 28, 1937, both supra.

9. Act of Feb. 14, 1859, 11 Stat. 383, 384, especially the clauses reciting grants of land to the State and the clause "that said State shall never interfere with the primary disposal of the soil within the same by the United States," the latter in light of Gibson v. Chouteau, 13 Wall. 92, 99, 80 U.S. 92, 99, 20 L.Ed. 534 (1871).

in the 1954 Act. And of course the courts cannot interfere with the administration of public property as arranged by the Congress and the Executive, so long as constitutional boundaries are not transgressed by either branch or statutory ones by the latter.

The judgment of the District Court dismissing the complaint is

Affirmed.