**C. J. Boss, Plaintiff-Appellant and Cross-Appellee, v. Coe Investment Co., a Delaware Corporation, Defendant-Appellee and Cross-Appellant.**

Gen. Nos. 10,496, 10,497, 10,498.

Fourth District.

January 22, 1964.

Hugh J. Graham, Jr., Graham & Graham, of Springfield, for appellant.

Traynor & Hendricks, of Springfield, for appellee.

ROETH, JUSTICE.

Three causes have been consolidated for the purpose of appeal. In order to fully understand this case a certain amount of background material is necessary.

On August 16, 1955, a judgment by confession in the amount of $3,307.65 plus $511.15 attorneys' fees was entered in the Circuit Court of Sangamon County in favor of Coe Investment Co. and against Florence Boss and C. J. Boss. The judgment was entered upon a judgment note dated July 13, 1955. Thereafter the judgment was opened up and defendants were given leave to answer. The answer filed denied the allegations of the complaint alleging consideration, delivery and authority to confess judgment and alleged that defendants had been induced to execute and deliver the note in question by fraudulent representations of

the plaintiff, made with intent to deceive, and relied on by defendants.

The issues thus made were tried three times by a jury. On the first trial the jurors were unable to agree on a verdict. The second trial resulted in a verdict for defendants but the trial judge set the verdict aside and granted a new trial because of the giving of erroneous instructions. The third trial resulted in a verdict for defendants and judgment was entered on this verdict. We affirmed this judgment in Coe Investment Co. v. Boss, 30 Ill App2d 113, 173 NE2d 743. During the course of this litigation Florence Boss died and is not involved in the present appeal.

Following the affirmance of the judgment entered after the third trial, C. J. Boss filed a motion in the original suit to fix and tax as costs his reasonable attorneys' fees and expenses incurred in defending the suit through three jury trials. To this motion Coe Investment Company filed a motion to strike. The motion of C. J. Boss to tax as costs his reasonable attorneys' fees and expenses was on April 5, 1963, nunc pro tunc as of March 15, 1963, denied by the trial court and an appeal (which is one of the appeals involved herein) was taken by C. J. Boss.

At the time the foregoing motion of C. J. Boss was denied, there was pending in the Circuit Court of Sangamon County an original complaint by C. J. Boss against Coe Investment Company, seeking the same relief as was sought in the foregoing motion. There was on file a motion by Coe Investment Company to strike this complaint and dismiss the action. On April 4, 1963, this motion was allowed and, plaintiff electing to stand on the complaint, final judgment was entered against plaintiff. An appeal (which is the second appeal involved herein) was taken by C. J. Boss.

419

Thereafter on April 10, 1963, a motion was filed in the latter case by Coe Investment Company to tax its attorney's fees against C. J. Boss which was denied. An appeal was taken from this order by Coe Investment Company (which is the third appeal involved herein). This appeal appears to have been abandoned by Coe Investment Company in the briefs filed herein.

■ The question presented by this appeal is: where a judgment by confession is opened up to permit a defendant to answer and where by the answer the defense that defendant was induced to execute the note by false representations of plaintiff is alleged, which defense is ultimately sustained, may the successful defendant recover from the plaintiff his reasonable expenses and attorney's fees incurred in defending the suit on the note?

The leading case in Illinois dealing with this problem is Ritter v. Ritter, 381 Ill 549, 46 NE2d 41. In that case two individuals purchased two pieces of property at a foreclosure sale. The certificate of purchase for the two properties was issued to them as joint tenants. The two individuals agreed that in the event of no redemption one of the individuals would take one of the pieces of property and the other individual take the other property. Prior to the expiration of the period of redemption, one of the individuals became critically ill and during that fatal illness he asked the other individual whether his heirs would have any difficulty in securing his property if there was no redemption. He was assured that the agreement would be carried out. Subsequently, after the redemption period expired, the surviving joint tenant refused to convey pursuant to the agreement. A suit was then brought by the heirs charging that the surviving joint tenant had wrongfully, fraudulently and with intent to cheat, refused to carry out the agreement and that a constructive trust arose. The heirs

420

were successful in this suit and then sought to recover from defendant their attorney's fees and expenses. In discussing the question the court said:

> "There is no principle of the common law that permits a successful litigant to recover from his losing adversary the costs and expenses of the litigation. . . .
>
> "The allowance and recovery of costs rests entirely upon statutory provisions and no liability for costs exists in the absence of statutory authorization. Any party to an action, claiming the right to recover costs from his adversary, must found his right upon some provision of a statute. This has been the law in this State from the earliest time. . . .
>
> "The rule is also well established that attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof, and this rule applies equally in courts of law and in courts of equity."

There, as in the case at bar, an attempt was made to circumvent these general rules by insisting that the necessity of the successful party in security services of counsel and incurring expenses was brought about by the wrongful conduct of the unsuccessful party. In disposing of this contention the court said:

> "The plaintiffs argue that they are entitled to recover in a separate action because the wrongful conduct of the defendant caused them to engage in litigation with him to secure a return of their property and that as a proximate result of the defendant's wrongful conduct they were damaged to the extent of the loss of time, attorney fees and other expenses expended by them in the first

litigation. This reasoning is based on the concept that the wrongful acts of the defendant created a liability over and above his liability in the original action, i. e., a tort liability to pay the expenses of the plaintiffs in enforcing their rights in the first suit. The defendant had the right to resist their claim and if plaintiffs wished to establish their right it was necessary for them to resort to litigation. . . .

"The policy of the rule is obvious. If the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action against the defendant for his attorney fees and expenses incurred in obtaining the preceding judgment. The rule contended for by the plaintiffs could not be limited to cases of constructive trust, for in many other classes of suits the action is necessitated by the defendant's wrongful conduct. If the plaintiff is successful in the suit, the probability is that the conduct of the defendant causing the suit was wrongful. When a defendant breaches a lease, violates the terms of a contract, commits a tort, misrepresents goods sold, unlawfully retains the personal property of the plaintiff, or remains in possession of real estate after the expiration of his tenancy, necessitating proceedings, his conduct is wrongful and may require a suit against him by the plaintiff. Under our jurisprudence the defendant may present any defense to such an action that he may have or that he may deem expedient, and in so doing he will not be subjecting himself to a second suit by the plaintiff based on the wrongful conduct of the defendant in causing the plaintiff

to sue him or in defending the action. The rule is the same even though the wrongful conduct of the defendant is willful, intentional, malicious or fraudulent."

See also Smith v. Michigan Buggy Co., 175 Ill 619, 51 NE 569.

██ Plaintiff relies upon Skelly Oil Co. v. Universal Oil Products Co., 338 Ill App 79, 86 NE2d 875. In this case Universal Oil Products Co. had secured an adjudication in a Federal District Court that a certain oil company had infringed patents held by it. This decision was affirmed by the Circuit Court of Appeals. It then commenced a series of suits against other companies for patent infringements based upon this adjudication. Years later it was discovered that Universal had bribed a federal judge in the Circuit Court of Appeals to write the decision in its favor. Subsequently the Skelly Oil Co. brought suit against Universal Oil Products Co. to recover attorneys' fees and expenses in defending the patent infringement suit. Recovery was permitted. The court, however, distinguished the type of fraud involved in the Ritter case and the type involved in the above case as follows:

"The shocking type of fraud involved in the instant case should not be compared with the ordinary case of fraud and deceit, or where perjury is deliberately employed by a successful litigant in the trial of a case. The latter type of fraud is not uncommon, but the bribery of a Federal Court of Appeals judge to secure a corrupt judgment, and the use of the corrupt judgment by the briber as a basis for similar litigation against others, is quite a different type of fraud from that discussed in the cases relied upon by defendant."

This case recognizes a well established exception to the Ritter case, i. e., those cases in which an award of exemplary or punitive damages is permitted, that is, where the wrongful act may be characterized as being wilful, wanton, malicious or oppressive. Such is not the situation in the case at bar.

■ Plaintiff finally contends that its motion to tax attorney's fees and expenses filed in the original case of Coe Investment Company v. C. J. Boss, supra, filed after affirmance of that case by this court, falls within the provisions of Sec 41 of the Civil Practice Act. There are two answers to this contention. In Adams v. Silfen, 342 Ill App 415, 96 NE2d 628, Sec 41 was construed to mean that a claim for expenses and attorney's fees should be made without delay at the trial. The purpose of this is to afford the trial judge the opportunity of determining whether the circumstances developed at the trial bring the case within the provisions of Sec 41. In the case at bar the motion was not filed at the trial and in fact was not filed until over 14 months after our previous order of affirmance. In the second place, in Ready v. Ready, 33 Ill App2d 145, 178 NE2d 650, it was held that this section was in the nature of a sanction to prevent harassment by bringing suits which are vexatious or without any legal foundation or the pleading of matters which are frivolous. After three trials under the circumstances hereinbefore pointed out, we are not constrained to say that the trial judge erred in denying plaintiff's motion filed under Sec 41.

Accordingly the judgments of the Circuit Court of Sangamon County will be affirmed.

Affirmed.

CARROLL, P. J. and REYNOLDS, J., concur.