GEORGE M. BRITT *et al.*, Plaintiffs-Appellants, v. FEDERAL LAND BANK ASSOCIATION OF ST. LOUIS *et al.*, Defendants-Appellees.

Second District   No. 86—0248

Opinion filed March 11, 1987.

Robert L. Collins, of Carol Stream, for appellants.

George F. Mahoney III, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

On November 8, 1985, plaintiffs, George M. Britt and Anita C. Britt, filed suit against defendants, the Federal Land Bank Association of St. Louis (bank or defendant), Yorkville National Bank, John Doe, Jane Doe, and all unknown parties, seeking to quiet title to property they formerly owned. Plaintiffs alleged in their verified complaint that the documents labeled "Land Patents" signed and recorded by them, conveyed or vested in them title superior to any other claims, including that which was acquired by defendant bank in the foreclosure proceeding concluded in the circuit court of Kendall

County. Plaintiffs' complaint further alleged that the bank was wrongfully placed in possession of the foreclosed-upon property by order of the circuit court of Kendall County entered May 6, 1985, *nunc pro tunc* April 24, 1985.

It appears that on April 25, 1985, plaintiffs filed documents bearing the caption of a "Land Patent" in the office of the Kendall County recorder of deeds. The "Land Patents" begin, "I, George M. Britt & Anita C. Britt, bring up this land patent in my name." Attached as an exhibit to each of the documents entitled "land patents" is a copy of a land patent issued on July 1, 1841, by the General Land Office wherein the grantees were "Francis Evans" and "James Evans."

On December 13, 1985, defendant bank filed its motion to dismiss plaintiffs' complaint with prejudice pursuant to sections 2—619(a)(4) and 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—619(a)(4), 2—619(a)(9)), alleging plaintiffs' action was barred under the theories of *res judicata* and collateral estoppel. On January 21, 1986, plaintiffs filed their motion for a change of venue from the Honorable John Peterson. On January 27, 1986, plaintiffs' change of venue motion was granted, and the cause was transferred and assigned to the Honorable James Wilson for hearing. On February 28, 1986, the trial court heard arguments, and the plaintiffs' complaint was dismissed with prejudice.

Plaintiffs contend on appeal of the dismissal of their complaint that: (1) "American farmers under the acts of Congress of 1818, 1821 and 1823, have set up a solid basis made for [*sic*] the validity of Land Patent over all other titles and where these titles clash with local title, the Land Patent is superior"; (2) "it is well-settled that a Land Patent which has been recorded prior to a foreclosure sale gives a fee simple title to plaintiffs, and the title arising out of a foreclosure is not a real title at all, but only a color of title, inferior in every way to the plaintiffs' Land Patent"; and (3) plaintiffs' Land Patent can only be attacked in Alexandria, Virginia, and not in the circuit court of Kendall County.

Defendant bank maintains that: (1) the judgment of foreclosure was entered March 22, 1985, the property was sold at a sheriff's sale May 8, 1985, and the order confirming the sale was entered May 24, 1985, and that plaintiffs are collaterally estopped from claiming superior title and that the foreclosure procedure was *res judicata* as regards plaintiffs' rights in the property; (2) the theories of *res judicata* and collateral estoppel underlying defendants' sections 2—619(a)(4) and 2—619(a)(9) (Ill. Rev. Stat. 1985, ch. 110, pars. 2—619(a)(4), 2—

619(a)(9)) motion preclude relitigation of claims to the property; (3) in addition to the theories relied upon by the trial court, plaintiffs' claim of superior title is unsupported by any Illinois case law and has been rejected when raised in the Federal courts; and (4) attempts to gain superior title by the filing of land patents have been met by criminal sanctions.

■■ Supreme Court Rule 341(e)(7) (103 Ill. 2d R. 341(e)(7)) provides, among other things, that an appellant's brief must contain citations to the relevant authority supporting the argument advanced on appeal. (See *Village of Cary v. Jakubek* (1984), 121 Ill. App. 3d 341, 345, 459 N.E.2d 651; *Michalek v. Village of Midlothian* (1983), 116 Ill. App. 3d 1021, 1039, 452 N.E.2d 655.) A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 943, 453 N.E.2d 1133; *Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 825-26, 441 N.E.2d 360.) A contention that is supported by some argument but by no authority whatsoever does not satisfy the requirements of Supreme Court Rule 341(e)(7). (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942-43, 453 N.E.2d 1133; *Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 969, 418 N.E.2d 56.) The well-established rule is that bare contentions without argument or citation of authority do not merit consideration on appeal. *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 419, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942-43, 453 N.E.2d 1133.

While purporting to cite authority, generally, for what is set forth in their briefs as issues on appeal, plaintiffs have failed to comply with Supreme Court Rule 341(e)(7) (103 Ill. 2d R. 341(e)(7)). We do not view the inclusion of citations to irrelevant authority scattered throughout their brief to constitute even an attempt to comply with the rule. In fact, plaintiffs' briefs are nothing more than a compilation of disjointed and nonsensical claims and legal conclusions totally unsupported by citations to the record or relevant legal authority. We may treat the issues raised as having been waived for failure to cite authority. (103 Ill. 2d R. 341(e)(7).) However, as the question of the legal significance of "land patents" on land titles may arise again, we undertake an analysis of the issue.

■■■ Defendant's motion to dismiss was based upon the bar of a prior adjudication, the foreclosure proceeding. Section 2–619(a) of the Code of Civil Procedure provides that a defendant may, within the time for pleadings, file a motion for dismissal of the action on the ground that the claim or demand asserted against defendant is barred

by other affirmative matter avoiding the legal effect of or defeating the claim or demand. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a).) An affirmative matter under this section is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained or inferred from the complaint. (*Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 252, 433 N.E.2d 1350.) Generally, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue as to the parties and their privies and all other actions in the same or any other court of competent jurisdiction. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52, 461 N.E.2d 959.) The principle of *res judicata* extends not only to questions which were actually litigated but also to all questions which could have been raised or determined. *Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432, 447 N.E.2d 834; *Kuehner v. Melliere* (1969), 118 Ill. App. 2d 348, 351, 255 N.E.2d 36.

The parties have disclosed no Illinois authority on whether the filing of what is alleged to be a "land patent" by the former mortgagors of property has any legal effect, much less whether such a document filed after the entry of a judgment of foreclosure would have any significance. However, as defendant ably documents, the courts of other States and the Federal courts have spoken to the issue of the legal sufficiency of "land patents." These courts have rendered decisions upon a variety of issues based upon facts similar to the case at bar, where plaintiffs in a suit to quiet title filed a document described as a land patent and claimed superior title to that of the purchaser at the judicial sale of the property. *Hilgeford v. Peoples Bank* (7th Cir. 1985), 776 F.2d 176; *Hilgeford v. Peoples Bank* (N.D. Ind. 1985), 607 F. Supp. 536; *Nixon v. Phillipoff* (N.D. Ind. 1985), 615 F. Supp. 890; *Federal Land Bank v. Gefroh* (N.D. 1986), 390 N.W.2d 46; *Timm v. State Bank* (Minn. App. 1985), 374 N.W.2d 588; *Wisconsin v. Glick* (7th Cir. 1986), 782 F.2d 670.

Because of the lack of Illinois case law on what appears to be a procedure without legal foundation in Illinois, we find the analysis of Judge William C. Lee of the United States District Court for the Northern District of Indiana in *Hilgeford v. Peoples Bank* (*Hilgeford v. Peoples Bank* (N.D. Ind. 1985), 607 F. Supp. 536) instructive. There, as here, the plaintiffs attempted to establish superior title to the property foreclosed upon by their mortgagee, the Peoples Bank. Judge

Lee observed:

"The 'patent' involved here is not a grant by the United States; it is a grant by the plaintiffs. The 'patent' here is not a grant to some other holder so as to pass title on to another party; it is a self-serving document whereby the plaintiffs grant the patent to themselves. This 'patent' does not involve or concern 'public land;' it relates to plaintiffs' private property. The court cannot conceive how these federal provisions are implicated here, and thus federal question jurisdiction is absent.

Of course, the purported 'land patent' in this case fails for reasons independent of jurisdiction. As was noted before, the 'land patent' attached to plaintiffs' various filings is a grant of a land patent from the plaintiffs to the plaintiffs. It is, quite simply, an attempt to improve title by saying it is better. The court cannot conceive of a potentially more disruptive force in the world of property law than the ability of a person to get 'superior' title to land by simply filling out a document granting himself a 'land patent' and then filing it with the recorder of deeds. Such self-serving, gratuitous activity *does not, cannot* and *will not* be sufficient by itself to create good title.

* * *

Because this cause constitutes the third quiet title suit filed in this court within the past month on the basis of almost identical self-serving land patents (two of which were filed by these same plaintiffs), the court fears that other such suits will be filed unless a signal is sent that this court will not tolerate such obviously frivolous suits based upon documents which on their very face are legal nullities.

* * *

This cause falls squarely within the parameters of the type of frivolous claims that Rule 11 allows courts to issue sanctions for. It is based upon a purported land patent which indicates *on its face* that it is a self-serving document, drafted by the plaintiffs to grant themselves title to land, and which does not invoke any federal law or constitutional provision precisely because it is a blatant attempt by private landowners to improve title by personal fiat. Such lawsuits constitute a gross waste of precious judicial resources, for this court is forced to deal with patently frivolous lawsuits instead of addressing those suits on its docket which have merit and deserve close judicial scrutiny.

*** The court finds that a $250.00 fine is an appropriate sanction here. Further this order stands as public notice to all

future litigants who may seek to file lawsuits based on the same type of self-serving, invalid 'land patent:' this court will issue Rule 11 sanctions for such lawsuits. This court stands ready to adjudicate any federal question arising out of a valid federal land patent which has been signed by the Secretary of the Interior (43 U.S.C. sec. 15) and involves a grant of title to public lands. However, this court will not countenance suits based upon self-serving documents and pet theories about land ownership such as this one.

For the reasons stated above, this action is hereby DISMISSED for lack of jurisdiction pursuant to Federal Rules Civil Procedure 12(h)(3). Plaintiffs are hereby ORDERED to pay $250.00 to the Clerk of this court as a sanction for filing this lawsuit." 607 F. Supp. 536, 538-40.

The United States Court of Appeals for the Seventh Circuit in affirming the judgment of the district court stated, *inter alia*:

"The conclusion that this appeal is frivolous seems inescapable. The drafting and recordation of the Declaration of Land Patent was a blatant attempt by the Hilgefords to circumvent the Bank's mortgage and improve their title. The district court informed them twice within a month's time that this device did not improve their title or form the basis for federal jurisdiction. On appeal, the Hilgefords have completely failed to support their claim of jurisdiction by citing relevant authority or by refuting the district court's analysis.

Our review of the briefs and record persuades us that this is vexatious litigation; an appropriate case for the imposition of sanctions. The Hilgefords have no support for their claims of superior title or federal jurisdiction. Their brief was also woefully inadequate. We can think of no other reason for this appeal other than delay, harassment, or sheer obstinancy. *Reid*, 715 F.2d at 1155. Accordingly, we award the Bank $500 in damages for this frivolous appeal in addition to the costs allowed by Federal Rule of Appellate Procedure 39." *Hilgeford v. Peoples Bank* (7th Cir. 1985), 776 F.2d 176, 179.

In *Federal Land Bank v. Gefroh* (N.D. 1986), 390 N.W.2d 46, a case with facts strikingly similar to the case at bar and the *Hilgeford v. Peoples Bank* cases, the bank obtained a judgment of foreclosure. The plaintiff failed to redeem. The property was conveyed to the bank by sheriff's deed. The bank was then successful in its suit to remove the plaintiff from the property. On plaintiffs' appeal the Minnesota Supreme Court concluded:

"Gefroh's assertion that his property was immune from mortgage foreclosure because title stemmed from a federal land patent is completely without merit. Even 'an entryman on government lands, holding the same under the homestead laws, may give a valid mortgage thereon,' [citation]. Gefroh mortgaged his property to the Bank in return for a loan. Therefore, his property was subject to foreclosure action." (390 N.W.2d 46, 47.)

The court affirmed the judgment of eviction.

*Nixon v. Phillipoff* (N.D. Ind. 1985), 615 F. Supp. 890, was another district court case involving an attempt to claim Federal jurisdiction by reason of the plaintiffs' "Land Patent." The district court said: "This court has considered Nixon's land patent and found it to be a frivolous legal nullity that did not and could not affect the title to the mortgaged land at issue in the underlying foreclosure action." 615 F. Supp. 890, 894.

Under common law tradition, all private titles since Norman times have originated from title held by the sovereign.(1 H. Tiffany, Real Property sec. 13 (2d ed. 1920).) The seminal opinion in American jurisprudence analyzing the origin of sovereign titles and setting forth the principles by which conflicting title claims based upon competing sovereignties was authored by Mr. Chief Justice Marshall in *Johnson v. M'Intosh* (1823), 21 U.S. (8 Wheat.) 543, 5 L. Ed. 681. There, Chief Justice Marshall outlined the means by which sovereigns acquire title (conquest, cession, and treaty) and stated that by the Treaty of Paris in 1783:

"[T]he powers of government, and the right to soil, which had previously been in Great Britain, passed definitively to the states." *Johnson v. M'Intosh* (1823), 21 U.S. (8 Wheat.) 543, 584, 5 L. Ed. 681, 691.

■ This sovereign title, which is absolute and encompasses on the part of the sovereign authority both ownership of the land and the right to govern the inhabitants thereof, is "allodial" title. This term is used in contradistinction to the term "fee simple title," which contemplates the highest title which may be privately held. (1 H. Tiffany, Real Property secs. 6, 13 (2d ed. 1920).) Fee simple title may freely be alienated by conveyance, mortgage, or devise but still be subject to some claim of the sovereign. (1 H. Tiffany, Real Property secs. 6, 13 (2d ed. 1920).) In current usage, the holder of fee simple title is still subject to dispossession by the government, through due process of law, for nonpayment of real estate taxes and by eminent domain proceedings.

The only correct premise supported by authority in the Britts'

brief is that land held by the Federal government is not subject to the acts of the States. (*Cf. Gibson v. Chouteau* (1871), 80 U.S. 92, 20 L. Ed. 534; *Oregon v. McKay* (D.C. Cir. 1955), 226 F.2d 343.) What is totally incorrect is the implicit foundation of the Britts' position: that the land patent issued to "James Evans" and "Francis Evans" in 1841 conveyed the entire title of the Federal government, such that no interest arising by operation of State law can attach to the title.

■ A land patent is merely the deed by which the government passes fee simple title of government land to private persons. (63A Am. Jur. 2d *Public Lands* sec. 70 (1984).) Once fee simple title is passed to an individual from the government, whether by land patent or otherwise, claims arising from conveyance or mortgage by that holder will be enforced against him. (*Cf. Stark v. Starr* (1876), 94 U.S. 477, 24 L. Ed. 276; *United States v. Budd* (1891), 144 U.S. 154, 36 L. Ed. 384; see also 63A Am. Jur. 2d *Public Lands* sec. 92 (1984).) Where, as here, a decree of foreclosure and sale has divested title from the former mortgagor, the mere fact that the mortgagor's claim of title may run directly back through his family to a 19th-century patent is of no consequence.

The assertion in the Britts' brief that they hold "fee simple allodial title" is untenable. The Britts have never held sovereign title and now have been divested of their fee simple title by due process of law in the foreclosure action.

The purported "perfected patent" filed by the Britts matches the description of similar documents filed in other States. In *Wisconsin v. Glick* (7th Cir. 1986), 782 F.2d 670, the Seventh Circuit Court of Appeals described these "new land patents" in the following terms:

> "People saddled with mortgages may treasure the idea of having clean title to their homes. The usual way to obtain clean title is to pay one's debts. Some have decided that it is cheaper to write a 'land patent' purporting to convey unassailable title, and to file that 'patent' in the recording system." 782 F.2d 670, 671.

■ The "new patent" or "perfected patent" theory asserted on appeal, as it relates to the original patents, is also defeated by the estoppel effect of the foreclosure judgment. To the extent that the new theory may be construed as a separate and independent claim, it will be accorded the same treatment by this court that it has been accorded by the district courts of Indiana, Wisconsin, and Minnesota and by the United States Court of Appeals for the Seventh Circuit. It is frivolous and without basis and should not be raised in the circuit courts of this State.

Defendant, Federal Land Bank Association of St. Louis, has moved in this court for the imposition of sanctions against plaintiffs and Robert L. Collins, their counsel. The motion, filed August 1, 1986, was ordered taken with the case. No objections to the motions have been filed, and the time for objections has long since passed. 103 Ill. 2d R. 361(b)(2).

The gravamen of defendant Bank's motion is:

"That Plaintiff's complaint, as signed by their attorney, alleged allegations which were made without reasonable cause and are frivolous and unwarranted. In substance, the thrust of their complaint to quiet title is purportedly grounded on a [sic] Plaintiffs' 'allodial' fee simple title emanating from 'land patents' from the Plaintiffs for the benefit of the Plaintiffs.

* * *

That the Plaintiffs' complaint and attorney Robert L. Collins' conduct in signing, filing and attempting to prosecute it, hinders the judicial process and constitutes a gross waste of judicial resources requiring the court to deal with patently frivolous law suits instead of addressing those suits on its docket which have merit and deserve close scrutiny."

■■ Section 2—611 (formerly section 41) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) is an attempt by the legislature to penalize the litigant who pleads frivolous or false matters or brings a suit without any basis in law and thereby puts the burden upon his opponent to expend money for an attorney to make a defense against an untenable suit. (*Ready v. Ready* (1961), 33 Ill. App. 2d 145, 161-62, 178 N.E.2d 650.) One of the purposes of section 2—611 is to prevent litigants from being subjected to harassment by the bringing of actions against them which in their nature are vexatious, based upon false statements, or brought without any legal foundation. 33 Ill. App. 2d 145, 162, 178 N.E.2d 650.

■■ While this motion is made for the first time in the appellate court, we hold that it was timely. (*Brooks v. Goins* (1967), 81 Ill. App. 2d 12, 225 N.E.2d 707.) We have held that the claim of plaintiffs to a title superior to that of defendant based upon plaintiffs' filing with the recorder of deeds a document described as a "land patent" is frivolous and brought without any legal foundation. We, therefore, remand this case to the circuit court of Kendall County for a hearing only on the single issue of determining reasonable attorney fees and costs (see *Voss v. Lakefront Realty Corp.* (1977), 48 Ill. App. 3d 56, 365 N.E. 347) expended by defendants in defense of the cause in the trial court. The hearing should be conducted by the judge who heard

defendant's motion. (*Boss v. Coe Investment Co.* (1964), 45 Ill. App. 2d 417, 195 N.E.2d 735.) The court should also assess reasonable fees and costs for defendant's defense of plaintiffs' appeal as a needless extension of a baseless lawsuit. *Manchester Insurance & Indemnity Co. v. Strom* (1970), 122 Ill. App. 2d 183, 258 N.E.2d 150.

■ Defendant included in its motion for sanctions allegations of a violation by counsel, Robert L. Collins, of section 7—102 of the Code of Professional Responsibility (87 Ill. 2d R. 7—102), which provides:

"In his representation of a client, a lawyer shall not
* * *

(2) knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by a good-faith argument for an extension, modification, or reversal of existing law."

Defendant contends that the plaintiffs' complaint, and attorney Robert L. Collins' conduct in signing, filing, and attempting to prosecute it, hinders the judicial process and constitutes a gross waste of judicial resources requiring the court to deal with frivolous lawsuits instead of addressing those suits on its docket which have merit and deserve close scrutiny.

The appropriate forum for consideration of this allegation is the Attorney Registration and Disciplinary Commission of the supreme court. The supreme court has the exclusive authority to regulate the practice of law; it has the power to impose sanctions for unprofessional conduct so as to protect the public interest and guard the legal profession against reproach. *In re Nesselson* (1979), 76 Ill. 2d 135, 137-38, 390 N.E.2d 857; *In re Mitan* (1979), 75 Ill. 2d 118, 387 N.E.2d 278, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 171, 100 S. Ct. 231. Accordingly, we deny that part of the motion.

Defendant's motion, taken with the case, is allowed in part, denied in part and remanded for a hearing and a determination of reasonable attorney fees and costs to be assessed against plaintiffs. The judgment of the circuit court of Kendall County is affirmed.

Affirmed.

Motion allowed in part, denied in part and remanded.

UNVERZAGT and INGLIS, JJ., concur.