TONDA J. PRYOR, Plaintiff-Appellant, v. AMERICAN CENTRAL TRANSPORT, INC., Defendant-Appellee.

Fifth District    No. 5—93—0090

Opinion filed March 1, 1994.

Gerald S. Bassett, of Bassett Law Office, P.C., of Wood River, for appellant.

Ted L. Perryman, of Roberts, Perryman, Bomkamp & Meives, P.C., of Belleville, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Plaintiff, Tonda Pryor, appeals from a jury verdict entered in favor of defendant, American Central Transport, Inc., and against plaintiff. On appeal, plaintiff contends that the court erred in not directing a verdict for her on the issue of liability in her cause of action for negligence because of contradictory statements made by defendant in a discovery deposition and an answer given on a subsequent written interrogatory. The basis for plaintiff's claim that a directed verdict was in order is three-pronged: (1) that defendant intentionally misled her with answers in a written interrogatory in which it was stated that no mechanical defect existed in defendant's tractor-trailer immediately prior to the accident involved herein, but at trial, defendant's sole defense to plaintiff's complaint for negligence was that there was a sudden mechanical defect in the truck; (2) that defendant's answers in the interrogatories and other reports were judicial admissions that no sudden mechanical defect occurred; and (3) that even without defendant's discovery abuses and judicial admissions, defendant's evidence for its defense of sudden mechanical defect was insufficient. We affirm for the reasons set forth below.

The evidence adduced at trial was as follows: On January 31, 1990, plaintiff was a passenger in an 18-wheel tractor-trailer truck which was driven by Ronald Hall. At about 7:35 a.m. that day, Hall was driving westbound on Interstate 64 near the O'Fallon, Illinois, exit. Two cars in front of Hall were exiting the interstate at the O'Fallon exit, so Hall changed over into the other westbound lane to go around the slowing cars so that he would not have to reduce his speed. After passing the exit, Hall coughed, and then he proceeded into the right-hand lane. When he went into the right-hand lane, the truck continued onto the right shoulder and into the mud alongside the roadway. The truck continued primarily in a straight direction upon leaving the roadway, but it crossed over the entrance ramp where it hit a car driven by Jack Miller. After crossing the entrance ramp to the interstate, the truck hit two thornbush trees and came to rest in a ditch. Plaintiff was injured in the accident and was taken to Belleville Memorial Hospital, where she was diagnosed as having two compression fractures in her thoracic spine. Plaintiff filed her complaint for negligence against both Ronald Hall and defendant, but, the day before trial, September 28, 1992, she voluntarily dismissed Hall as a defendant with prejudice.

Plaintiff called Dominic Finazzo, Jr., defendant's safety director, who testified that Hall called him immediately after the accident, but Hall did not indicate the cause of the accident. Hall told him that he had had a coughing attack and then the truck went off the highway. Finazzo admitted Hall told him about a spring breaking on the truck, which defendant claimed was the sudden mechanical defect that caused the accident, but he was unable to recall when Hall told him.

State Trooper Quantrel Patterson testified that he investigated the accident, and when he arrived, he saw Hall's truck down an embankment, and another car was to the truck's right. Patterson noticed that Hall's truck had damage to the right front and the car had damage to the left side. Patterson further testified that Hall told him he was driving west on Interstate 64 in the left-hand lane. Patterson testified that Hall told him he had sneezed, and Patterson described Hall's statement as follows: "[He] lost control of his vehicle and at that time, it went off the roadway to the right and he did all he could to stop but he said couldn't [sic] and then he struck the other vehicle." Trooper Patterson did not recall Hall telling him about a broken spring. Patterson said that he would not have let Hall drive away if Hall had told him that a broken spring had caused the accident.

On cross-examination, Trooper Patterson admitted he walked over to the truck with Hall, and that Hall inspected the truck for about 10 minutes, before Hall drove off, but that his recollection of the accident was vague.

Plaintiff testified that she had been on the road with Hall for three weeks to a month before the accident in preparation for going to work for Hall and defendant. She had started the certification process for driving the truck, and all she lacked for certification was the results of her drug test. When Hall called her and asked her to come to work, Hall told her he would pay her $500 per week.

Plaintiff stated that the morning of the accident the condition of the truck was "all right," and that the weather was clear and nice. According to plaintiff, Hall had not been feeling well for a couple of weeks, and he would have coughing spasms. The morning of the accident, the truck was already moving when she woke up. She put on her glasses and moved into her seat and put on her seat belt. Hall was driving in the left-hand lane when she got up. Plaintiff stated that Hall started coughing. When Hall went back into the right-hand lane, he continued to go right. Plaintiff did not feel anything unusual about the truck when Hall started to pull over into the right-hand lane. During the accident, plaintiff's seat belt came loose, and she

was bounced around inside the cab of the truck. She primarily hit the seat with her back, but she also hit the dashboard with her knees. As a result of the accident, she suffered two compression fractures and hurt her lower back.

On cross-examination, plaintiff stated that, to the best of her knowledge, Hall was in compliance with all of the regulations the morning of the accident. She also admitted that the truck was in good mechanical condition, that the load was not over the weight limits, and that the materials had been properly loaded on the truck. It was her testimony that Hall was going about 55 miles per hour at the time of the accident. Although plaintiff did not feel the truck jerk before the accident, she admitted that she did not have her hands on the steering wheel. Plaintiff denied that there was a mechanical problem with the truck that caused the accident, but she admitted that Hall told her, when he visited her in the hospital, that a spring broke, causing him to go off the road.

Plaintiff denied that she had told the admitting physician at the hospital that the steering wheel on the truck had locked before the accident and that she told her family physician the same a month later. However, plaintiff's testimony on this issue was contradicted by other testimony.

Plaintiff's counsel read into the record answers to interrogatories given by Hall. According to plaintiff's counsel, these answers constituted an admission by defendant.

Hall testified at trial that he was the owner of the truck he was driving on January 31, 1990; however, he had leased the truck to defendant. Plaintiff was a passenger in the truck that day because Hall was going to hire her as a codriver or relief driver.

Hall explained that he had begun the trip in Dalton, Georgia, on the day before, January 30, 1990. He had travelled as far as Nashville, Illinois, that day but stopped at Nashville for the night. The following morning, he did a visual inspection of his truck as required and found nothing mechanically wrong. Hall's inspection consisted of checking the lights, the brakes, the tires, the fluid levels, and the suspension parts and checking completely around the truck for general soundness. Hall explained that defendant required that the truck be inspected by its mechanics once a month. The date of the last inspection by defendant's mechanics was January 19, 1990, at which time all that was found was a burned-out headlight. The Department of Transportation (DOT) requires that a truck be inspected once a year.

Hall stated he was rested and was in good physical condition the morning of the accident, with the exception that he was suffering

from a cold. The weather on January 31, 1990, was clear and dry with a temperature of about 60 degrees. Hall further stated that the truck had been loaded properly the day before and that the weight load was within the required limits.

Hall had driven approximately 36 miles that morning when he came to the O'Fallon exit. At the O'Fallon exit, two cars in front of Hall indicated that they were exiting, and they had slowed down to do so. Hall was driving at about 55 miles per hour, within the speed limit. In order to avoid slowing down for the exiting cars, he changed into the left-hand lane. After passing the two cars, he started back into the right-hand lane. Before changing lanes, he coughed. As Hall moved into the right-hand lane, he felt a "jerk" to the right. The truck went onto the right shoulder and into the mud at the side of the road. Once the wheels of the truck became stuck in the mud, Hall could not straighten the truck. Hall explained that he could not put the brakes on quickly as this would cause the wheels to lock up. Further, if he tried to stop the truck too fast by jamming into a lower gear, the truck would jackknife. He did brake as much as he could and he downshifted two gears in an attempt to slow down the truck and bring it to a stop. He stated that he mainly tried to keep the truck from overturning. The truck went over the entrance ramp, where it struck Jack Miller's car, but continued onward until it came to rest in a ditch after hitting two thornbush trees. Hall was unaware that he had hit Miller's car until after the truck came to rest. Hall immediately got out of the truck and did a quick check to make sure no fuel line had broken and that there was no danger of fire breaking out. The only problem that Hall noted in his cursory check of the truck was that the heater lines were broken, causing water to leak out.

After the State trooper arrived and was filling out his accident report, Hall received a ride to a nearby service station from a wrecker. At the service station, Hall called defendant and reported the accident. Hall was unaware that the left leaf spring had broken when he called defendant. Hall bought materials to fix the broken hose at the service station and returned to the truck. The wrecker pulled his truck out of the ditch and onto the shoulder. At that time, Hall discovered that the left leaf spring, the spring that attaches the front axle to the frame of the truck, had broken. Hall drove his truck to the next exit at about 10 miles per hour. A wrecker came from the truck dealership in St. Louis, Missouri, and towed the truck to the dealer for repair of the spring. According to Hall, he still had possession of the spring.

On cross-examination, when asked by plaintiff's counsel what

caused the accident, Hall stated that, as "best as he could tell," it was because of the spring. Hall further testified that he told the insurance people and defendant's safety director that the spring broke on the truck.

Plaintiff was impeached several times during the course of the trial, which testimony we are omitting, along with the extensive testimony pertaining to plaintiff's injuries, treatment, and prior medical conditions and testimony as to lost wages, present and future, and a monetary value for pain and suffering. Because all of this testimony is irrelevant for our discussion of the issues presented on appeal, we will not set forth that testimony. Following trial, the jury found that defendant was not guilty of negligence and ruled in defendant's favor. Plaintiff appeals. We now consider the issues raised on appeal.

■ Plaintiff's first contention is that defendant's discovery violations, *i.e.*, the false and misleading answers to interrogatories that the truck had no mechanical defect at the time of the accident, warranted a directed verdict, since defendant's sole defense at trial was that the accident was caused by a sudden mechanical defect. Plaintiff thus contends that the trial court erred in not granting her motion for directed verdict at the close of all the evidence. Plaintiff's argument must fail for several reasons.

Plaintiff alleges that she was misled to believe that there was no mechanical defect in the truck by the answers to Hall's interrogatories in this case. The specific questions and answers regarding this matter were provided by Hall, in his signed interrogatories of January 25, 1992, and were as follows:

"Q. State whether or not you were familiar with the mechanical condition of the vehicle which you were operating at the time of the collision and whether or not there were any defects in said vehicle, mechanical or otherwise, at or immediately before the said incident that affected the operating condition of the vehicle, to your knowledge, in any manner whatever.

A. Yes, to the best of my knowledge, there were no defects in said vehicle [*sic*] immediately prior to the incident."

According to plaintiff, these interrogatories were completely contradicted by trial testimony presented by defendant, since Hall testified that a broken spring caused the accident, in essence, raising a defense of "sudden mechanical defect." Plaintiff asserts that this abuse of discovery by defendant warranted the granting of her motion for directed verdict.

We first note that plaintiff has included in the appendix of her brief her cross-examination of Hall in his discovery deposition taken

on March 19, 1991, in the companion case of Jack D. Miller v. American Central Transport, Inc., St. Clair County No. 90—L—826. In the discovery deposition, the following colloquy transpired between plaintiff's counsel and Hall:

"Q. You said the load shift [*sic*], or you felt a shift?

A. The tractor shift of the truck.

Q. What do you mean by that? I don't understand that.

A. A jerking movement of the truck.

Q. So you coughed when you were going—or you were coming from the passing lane into the right-hand lane of travel?

A. Yes.

Q. And you coughed as you were doing that?

A. I coughed as I was preparing to do that. As I turned, then the shift in the truck, and it went off the shoulder of the road. It happened very quickly.

Q. Do you feel a shift like that much in a truck?

A. No.

Q. What usually causes that, or what do you think caused it that day?

A. I believe it was caused by the left spring breaking.

Q. Why do you think the left spring broke?

A. After the accident was done, I was heading around the truck, and I found that the left spring was broken. I believe that it broke as I was turning back to the right lane from the left, and that is what caused me to go off the road."

Plaintiff also admits in her brief that she knew of Hall's testimony at his deposition, as plaintiff's counsel had also represented Jack Miller in the companion case. Because plaintiff had knowledge of the broken spring approximately $9^1/2$ months before Hall's answers to interrogatories were submitted to plaintiff, it is difficult to see how plaintiff was misled or prejudiced.

Plaintiff's assertion of surprise and prejudice is further undermined by the fact that defendant had asserted the issue of a factual dispute about a mechanical defect in its "Suggestions in Opposition to Plaintiff's Motion for Summary Judgment," which was filed on August 14, 1992, approximately a month and a half before trial. Thus, plaintiff was put on notice of the possibility of this issue being raised at this time, if not before from Hall's discovery deposition.

Because of this prior notice to plaintiff of the broken spring, plaintiff has waived this issue for failure to make a timely objection to the presentation of the evidence regarding the broken spring. For an issue to be preserved for review, a contemporaneous or timely objection must be raised both at trial and in a post-trial motion. (*Von Seggren v. Smith* (1987), 151 Ill. App. 3d 813, 503 N.E.2d 573.) Here,

since plaintiff had prior notice of the broken spring, she had opportunities to either prevent or strike testimony about the spring, thereby preventing any alleged prejudice to her at trial.

There were several procedural actions plaintiff could have taken in this case. She could have filed an objection to Hall's answer to the interrogatories at any time, once she had reason to believe the answer to the interrogatory was erroneous. Supreme Court Rule 213(c) (134 Ill. 2d R. 213(c)) provides that "[a]ny objection to an answer or to the refusal to answer an interrogatory shall be heard by the court upon prompt notice and motion of the party propounding the interrogatory." Plaintiff did not file an objection to Hall's interrogatory answers. If plaintiff had filed such an objection, the court could have applied numerous sanctions against defendant, if it had found that defendant's answer constituted an abuse, including excluding Hall's testimony on the broken spring. Similarly, plaintiff could have attempted to exclude Hall's testimony on the broken spring by filing a motion *in limine* prior to trial, but she failed to do so. Lastly, if plaintiff had not followed the two prior procedures, she could have objected at trial to Hall's testimony at the time it was presented, alleging surprise, since the defendant had not filed an affirmative defense that the broken spring caused the accident. This she did not do. All of these procedures would have been timely or contemporaneous objections to the introduction of the evidence of the broken spring which would have preserved this issue on review. Plaintiff's motion for directed verdict at the close of all the evidence was too late to adequately preserve this issue.

Even if we were to consider this issue, we do not find that Hall's interrogatory answers were contradicted by his testimony at trial. As defendant points out in its brief, plaintiff's interrogatory question was a compound question in that it asked if there was a mechanical defect either "at or immediately before the said incident." Hall answered that there was no mechanical defect "immediately prior" to the accident. He did not answer whether there was a mechanical defect *at the time* of the accident. Thus, Hall's answer in his interrogatory was not contradictory to his testimony at trial; his interrogatory answer was, at most, incomplete. We do not approve of evasive answers to interrogatories, and we seriously considered reversing this case. However, plaintiff's prior knowledge of the defense and lack of timely objections compel us to agree with the trial judge that plaintiff was not surprised by the defendant.

■ Plaintiff next contends that a directed verdict in her favor was warranted because Hall's answer to the interrogatory regarding a mechanical defect of the truck constituted a judicial admission. "A

judicial admission is a (1) deliberate, (2) clear, (3) unequivocal, (4) statement of a party, (5) about a concrete fact, (6) within that party's peculiar knowledge." (*Brummet v. Farel* (1991), 217 Ill. App. 3d 264, 266, 576 N.E.2d 1232, 1234.) "A judicial admission is conclusive upon the party making it; it may not be controverted at trial or on appeal. Judicial admissions are not evidence at all but rather have the effect of withdrawing a fact from contention." M. Graham, Evidence Text, Rules, Illustrations and Problems, at 146 (1983).

We have already discussed and determined that Hall's answer to the interrogatory was vague and incomplete. It would be contradictory on our part to now hold that the answer was clear and unequivocal. In light of Hall's incomplete answer to the interrogatory, his deposition, and his testimony at trial, we cannot say that Hall's answer to the interrogatory was deliberate, clear, and unequivocal. We need not discuss whether Hall was a spokesman for the defendant, as the parties never raised that issue.

We note also that, at trial, plaintiff did not ask specifically that Hall's answer be considered a judicial admission when counsel obtained permission from the court to read Hall's interrogatory answer into the record. All counsel asserted was that it was an "admission." Generally, testimony in discovery depositions is held to be an evidentiary admission (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201; *Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 489 N.E.2d 340) with the limited exception of some recent cases that have carved out the judicial admission exception to this rule. (See *Brummet v. Farel* (1991), 217 Ill. App. 3d 264, 576 N.E.2d 1232; *Young v. Pease* (1983), 114 Ill. App. 3d 120, 448 N.E.2d 586.) Because of the difference in treatment of an evidentiary admission and a judicial admission (evidentiary admissions can be controverted or explained by the party, while judicial admissions cannot be controverted or explained), it was incumbent upon plaintiff to state specifically the type of admission she was seeking.

Further, in plaintiff's oral motion for directed verdict, she did not assert the type of admission she was alleging. In her motion for directed verdict, plaintiff simply stated that she was seeking a directed verdict "only because their admissions that there was no mechanical defect in their interrogatories, everything else and then coming into trial saying a spring caused it." The trial court apparently believed on the motion for a directed verdict that the plaintiff was asking it to accept the answer to the interrogatory as an evidentiary admission. Merely asserting that the answer to the interrogatory was an "admission" was insufficient to put the trial court and, therefore, this court, on notice of the type of admission the

answer to the interrogatory was, *i.e.*, whether it was an admission against interest, an evidentiary admission, or a judicial admission. Again, plaintiff's assertion that the interrogatory answer was an admission, without more, is insufficient to preserve this issue.

Moreover, the plaintiff allowed the defendant to call Hall and allowed Hall to testify about the broken spring causing the accident without raising the objection that the answer to the interrogatory was a judicial admission that defendant should not be allowed to controvert or explain. Once the evidence was before the trier of fact, the plaintiff should have at a minimum made a motion to strike all of the testimony regarding the broken spring, if plaintiff did not want the trier of fact to consider such. Since plaintiff failed to make a motion to strike, the trier of fact could do nothing but consider the evidence that the accident was caused by the broken spring.

■ Plaintiff also asserts that certain reports (accident reports for insurance purposes and to DOT) were also judicial admissions. However, plaintiff cites no authority for holding that such reports are judicial admissions. Failure to cite relevant authority, as required under Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), allows this court to disregard the issue raised. *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.

■ The last issue raised by plaintiff on appeal is that, regardless of our disposition of the alleged discovery abuses or judicial admissions, the evidence presented by defendant on sudden mechanical defect was insufficient, and therefore, based on all the testimony, plaintiff was entitled to a directed verdict. We disagree.

When determining whether a directed verdict should have been granted, the question is whether, when viewed in the light most favorable to the opponent, here the defendant, the evidence so overwhelmingly favors the movant such that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Casey v. Pohlman* (1990), 198 Ill. App. 3d 503, 555 N.E.2d 1221.) Here, the evidence viewed in favor of defendant is as follows: The truck was in good condition on the date of the accident and was properly loaded and within the weight limits. Hall was in good physical condition, had abided by all of the regulations, and was driving in an appropriate manner and within the speed limit. Plaintiff herself testified that she considered Hall a good driver and that Hall was awake, because he was coughing before pulling the truck back into the right-hand lane. Hall testified that there was a jerk in the steering wheel just before the truck went off the road and that the left leaf spring was broken. (Admitted, there was no testimony by either party as to what effect a broken left leaf spring

would have on the steering of a truck, but both parties assumed throughout the trial and in closing arguments that if the spring had in fact broken, it would have caused the accident.) The evidence also revealed that plaintiff had told two physicians, after the accident, that the steering wheel had "locked" on Hall, giving rise to the inference that a mechanical defect occurred at the time of the accident. Thus, we cannot say that the evidence overwhelmingly showed that Hall was negligent and that a mechanical defect did not cause the accident. The court did not err in denying her motion for directed verdict.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

CHAPMAN and GOLDENHERSH, JJ., concur.