Rule 23 Order filed

April 18, 1997;

Motion to publish granted

June 2, 1997.  
 NO. 5-96-0244

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

                                  

CONCERNED ADJOINING OWNERS,       )  Appeal from the   

a Concerned Citizen's Group,      )  Pollution Control Board.

and THOSE OPPOSED TO AREA         )

LANDFILLS (T.O.T.A.L.),           )

a Concerned Citizen's Group,      )

                                  )

     Petitioners-Appellants,      )

                                  )

v.                                )  PCB Nos. 96-79 & 96-82

                                  )

THE POLLUTION CONTROL BOARD,      )  

THE CITY OF SALEM, ROGER KINNEY,  )

City Manager of the City of Salem,)

and ROGER FRIEDRICKS,             )

                                  ) 

     Respondents-Appellees.       )  

_________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:   Petitioners, Concerned Adjoining Owners (CAO) and Those Opposed to Area Landfills (TOTAL) (referred to collectively as the objectors), appeal from a final order of the Pollution Control Board (Board), entered on March 7, 1996.  The Board affirmed a decision of the City of Salem granting site approval for an extension of an existing landfill (landfill No. 2) and for a new landfill (landfill No. 3), both of which are to be regional pollution-control facilities.  

On appeal, both CAO and TOTAL argue that this court should reverse the decision granting site approval because the hearing before the Salem city council and mayor (hereinafter referred to collectively as the council) was fundamentally unfair.  The objectors also contend that the council's grant of site approval is against the manifest weight of the evidence in that the applicant for the site permit, Roger Kinney, the Salem city manager, did not meet his burden of proof in that hearing.  Additionally, TOTAL argues that the council did not have jurisdiction to rule on the site application, and CAO argues that the Board improperly refused to consider its position.  For reasons we will more fully explain, we affirm.

I. FACTS

In July 1995, four days of hearings were held on Kinney's application for site approval for the regional pollution-control facilities.  Prior to the hearing, in 1994, Salem purchased 40 acres outside of the city limits for the proposed landfill No. 3.  After purchasing the land, the City annexed the 40 acres into the city limits.  Once the land was within the city limits, Salem was responsible for making the decision regarding site-approval.  415 ILCS 5/39.2(a) (West 1992).  If the property had not been annexed into Salem, the Marion County Board would have been responsible for hearing the site-approval application.  The application requested that both facilities be allowed to accept solid, nonhazardous waste from the surrounding, 16-county area.  At the time of the hearings, the existing landfills accepted waste only from Salem.

At the beginning of the hearings on the application for site approval, attorneys for the objectors argued that the council was biased, in that it had already expended large sums of tax money in contemplation of the new regional pollution-control facility, and the council was thereby prejudiced in favor of granting site approval.  The objectors argued that the hearing would be fundamentally unfair if the site-approval decision was to be made by the same body that had already purchased 40 acres of land for $120,000 for that very purpose.  The hearing officer, Christine Zeman, did not rule on the unfairness issue but stated that the objectors had preserved their fundamental fairness objection for the record, so that the Board could take it up if the site approval was granted.

The applicant, Kinney, presented evidence concerning the criteria for site approval, listed in section 39.2 of the Environmental Protection Act (the Act) (415 ILCS 5/39.2(a)(i)-(ix) (West 1992)).  To summarize the voluminous record, the applicant presented testimony in support of all of the relevant section 39.2 criteria:

"(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

***

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows;

***

(viii) if the facility is to be located in a county where the county board has adopted a solid waste management plan ***, the facility is consistent with that plan."  415 ILCS 5/39.2 (West 1992).

The objectors did not refute criteria four, that the facility will be located outside the 100-year flood plain.

The procedure followed in the hearing was adopted by the city council prior to the hearing.  The applicant presented his evidence and witnesses, the objectors were allowed to cross-examine each witness, then the city council was allowed to ask questions.  If the applicant wanted to ask additional questions, his attorney was allowed to do so in redirect examination after the city council members finished their questions.  After redirect, the objectors were again allowed to cross-examine the witness, but only upon the questions asked in redirect, not the questions asked by the council members.  

The objectors argued that the procedure was unfair, that they should have been allowed to cross-examine each witness based upon not only the questions asked by the applicant but also the questions asked by the council.  The hearing officer overruled their objection.

TOTAL presented nine witnesses in opposition to the site application.  Gary Hall, a certified real estate appraiser, testified that the opinions given by the applicant's experts concerning the potential effect on the surrounding land values were unreliable and incomplete.  Hall admitted that he was not hired to give an opinion on whether the facility will be compatible with the surrounding area.  John Wright, a licensed real estate appraiser, testified that he agreed with Hall's testimony.  Jeff Dunahee, the owner of a realty company but not a certified real estate appraiser, testified that it was his opinion, based upon common sense, that the property surrounding the proposed landfills would decrease in value if the site proposal were granted.

Charles Norris, a hydrogeologist, testified that leachate was almost certainly leaving the landfill No. 2 area and discharging into a nearby creek or the surrounding drinking water wells.  Norris urged the council to investigate the possible leachate problem before granting site approval.  Norris also testified that significant portions of landfills Nos. 2 and 3 consisted of wetlands, which are protected by the Federal government.  Norris testified that the wetlands investigation done by the applicant's experts was not reliable because the samples upon which the investigation was based were not gathered at the appropriate time of the year to accurately determine the existence of wetlands and not enough samples were taken.  In Norris's opinion, landfills Nos. 2 and 3 are not located to protect public health, safety, and welfare.  Later, Norris testified that he had insufficient information upon which to base this opinion.

John Thompson, the executive director of two nonprofit environmental organizations, testified that neither landfill No. 2 nor landfill No. 3 were necessary to serve the waste needs of the area they are intended to serve.  

Janet Carter Sullens, a member of the Marion County Board, testified that she was unaware of Salem's proposal to become a regional landfill.  She was not aware when she voted to approve Marion County's Regional Waste Management Plan (Waste Plan) that Salem's expanded landfills would accept waste from a 16-county area.  She thought the expansion would include Marion County only.

William Petersen, a landowner who lives 1320 feet from the proposed boundary of landfill No. 3 and about a quarter of a mile southeast of landfill No. 2, testified that some people with homes close to the landfill had trouble selling their homes since the landfill expansion was proposed.  He admitted, however, that 26 out of the 30 houses in his subdivision were built during the construction and expansion of the existing landfills.  

Lisa Hourigan, a landscaping business owner, stated that she believes the perimeter of landfill No. 2 and the entire area of landfill No. 3 consist of Federally protected wetlands.  She contacted the Army Corps of Engineers (Army Corps) and requested that they investigate to determine if there are wetlands in the area proposed for the landfills.

Kent Boyles, a wildlife biologist for the Illinois Department of Natural Resources, testified that the expansion of landfill No. 2 will be in an area that is predominantly wetlands, and that the proposed landfills will be detrimental to the natural ecosystems of the area.  He did not believe that the necessary permits had been issued to do any kind of construction in those areas, but he admitted that if construction were not to begin for five to ten years, it would not be necessary to apply for the permit yet.  He testified that in his opinion, STS Consultants, Ltd. (STS), the engineering firm hired by the applicant, deliberately misinterpreted the facts regarding the hydrogeology of the area in order to sway the opinion of the council in favor of granting site approval for the landfills.  Finally, Boyles testified that the loss of wetlands through landfilling would be detrimental to the public health, safety, and welfare and that the city council should seriously consider that before it made its decision.  

All of the objectors made a request to call Kinney, the city manager and applicant, as a witness in their case, in order to question him about a statement he made before he became the applicant, that he was not in favor of the proposed landfill projects.  The objectors also wanted to question him about the economics of the landfill, 
i.e.
, information about potential customers for the regional landfill, proposed prices, anticipated costs.  TOTAL's attorney argued that it would be fundamentally unfair to deny his request to call Kinney as a witness, as he was present in the courtroom and could provide additional information about the criteria regarding the need for the landfill.  The hearing officer denied the request, because Kinney did not call himself as a witness and because he objected to being called as a witness by the objectors.  

The applicant presented evidence in rebuttal that the Army Corps had issued the required permit for constructing the landfill, but that the report upon which the permit was based did not delineate wetlands in the area.  The Army Corps notified STS that it had received a complaint against STS's delineation of no wetlands.

At the close of all of the evidence, the hearing officer read the public comments to the council and stated that anyone wishing to make additional comment could do so in writing for 30 days after the hearing.  

On September 11, 1995, the council passed a resolution approving the application for site approval for landfills Nos. 2 and 3.  Both objectors filed petitions for review with the Board.  On December 12, 1995, a hearing was conducted on the petitions for review.  CAO and TOTAL were allowed to call Kinney and the council as witnesses in support of their arguments that the site-application hearing was fundamentally unfair and that the council did not have jurisdiction to hear the site application.  

On March 7, 1996, the Board entered its order affirming Salem's grant of site approval for landfills Nos. 2 and 3.  This appeal followed.

II. ANALYSIS

A. FUNDAMENTAL FAIRNESS

The objectors make an extremely logical argument, that a hearing on the issue of whether to place a landfill in a certain area which is conducted by the same people who have already purchased land and spent large sums of public funds for that very purpose is fundamentally unfair because it is designed to insure that the site application will be granted.  Despite the logic of the argument, our legislature and courts have already decided the issue against the objectors.  

In 
E & E Hauling, Inc. v. Pollution Control Board
, 107 Ill. 2d 33 (1985), the Illinois Supreme Court considered a similar argument.  In 
E & E Hauling
, the county board granted site approval for a landfill on land owned by the forest preserve district of Du Page County.  The Pollution Control Board reversed the county board's decision, and on appeal the supreme court held that the county board was not disqualified from acting as the decision-maker even though the county would receive revenues from the landfill.  CAO seeks to distinguish 
E & E Hauling
 on the basis that the county board/decision-maker was not the owner of the land, whereas in the case at bar, Salem is the owner of the land, by reason of purchasing the land and annexing it into the city limits.  However, the supreme court did not base its holding upon the ownership of the land but ruled instead that the statute allows a government authority with an interest in the outcome of the siting decision to rule on that issue.  

"More fundamentally, the board should not be disqualified as a decision-maker simply because revenues were to be received by the county.  County boards and other governmental agencies routinely make decisions that affect their revenues.  They are public service bodies that must be deemed to have made decisions for the welfare of their governmental units and their constituents.  Their members are subject to public disapproval; elected members can be turned out of office and appointed members replaced.  Public officials should be considered to act without bias."  
E & E Hauling
, 107 Ill. 2d at 42.

The court in 
E & E Hauling 
went on to state that it would not be unusual for a landfill to be located on publicly owned property, and that the legislature had placed the responsibility for siting decisions with the local authorities rather than the Illinois Environmental Protection Agency so that local people would be responsible for making the important decision about whether to place a landfill in their area.  
E & E Hauling
, 107 Ill. 2d at 42.  The court found that the legislature did not intend that unremarkable facts such as these would make fundamental fairness impossible.  
E & E Hauling
, 107 Ill. 2d at 42-43; 415 ILCS 5/40.1 (West 1992).  We find the ruling and rationale of 
E & E Hauling
 to be controlling.  Accordingly, we hold that the siting hearing was not fundamentally unfair simply because the Salem city officials had an interest in the outcome of the decision.  

The objectors also argue, however, that the council was biased in that it had already decided the issue before the hearing due to its activities in purchasing and annexing the land.  The objectors argue that Salem wanted the landfill to be expanded into a regional facility, so it bought the land and annexed it into the city, which took the decision out of the county board's hands and guaranteed that Salem's previous efforts and expenditures would culminate in a favorable siting-approval decision.  

Again, 
E & E Hauling
 is instructive.  There, the court determined that even if the decision-makers had already formed opinions about the proposed landfill, that did not mean that they had prejudged the adjudicative facts, 
i.e.
, the relevant criteria of section 39.2.  
E & E Hauling
, 107 Ill. 2d at 43.  See also 
Waste Management of Illinois, Inc. v. Pollution Control Board
, 175 Ill. App. 3d 1023, 1040 (1988) (where the court held that the fact that an administrative official has taken a public position or expressed strong views on an issue does not overcome the presumption that the official will fairly and objectively decide the controversies before them).  Where the administrative agency, or municipal government, as in the case at bar, "operates in an adjudicatory capacity, bias or prejudice may only be shown if a disinterested observer might conclude that the administrative body, or its members, had in some measure adjudged the facts as well as the law of the case in advance of hearing it."  
Waste Management
, 175 Ill. App. 3d at 1040.

The facts of the instant case do not reveal that the council had made any prejudgments about the criteria for siting approval. On the contrary, the record shows that the council asked relevant questions of all of the witnesses about each of the criteria.  The questions did not demonstrate any bias for or against siting approval.  The objectors did not present any evidence to show how the council was biased, other than the generic argument that it must have been biased because it had already taken the preliminary actions necessary to get to the siting hearing stage.  We do not find this argument sufficient to overcome the presumption that the council acted fairly and objectively where the record does not indicate any prejudgment of the statutory criteria for making the siting decision.

TOTAL makes 10 additional fundamental fairness arguments.  First, they argue that the attorney representing the applicant, who is also the city manager, improperly performed work for the council.  However, TOTAL fails to cite any authority in support of this argument.  Therefore, we deem this issue waived on review.  
Pryor v. American Century Transport, Inc.
, 260 Ill. App. 3d 76 (1994); Supreme Court Rule 341(e)(7) (145 Ill. 2d R. 341(e)(7)).  Six of the remaining nine fundamental fairness arguments are also unsupported by any authority and are likewise waived.  
Pryor
, 260 Ill. App. 3d 76.  The waived arguments concern the procedure employed prior to and during the siting-approval hearing.  Although these arguments are waived, we have thoroughly reviewed the record and do not find any error in the procedure of the siting hearing.  The record is clear that the procedures followed at the siting hearing were designed to allow Salem to decide the only issue before it, whether the application met all of the relevant criteria listed in section 39.2.  415 ILCS 5/39.2 (West 1992).

TOTAL additionally argues that the objectors were severely limited in presenting evidence on the economics and profitability of the proposed landfills.  The objectors sought to question Kinney, the applicant at the siting hearing, but were denied this opportunity.  The Board allowed TOTAL to call Kinney as a witness at the hearing on the petition for review.  The Board found that the decision in the siting hearing not to allow Kinney to be called as a witness did not cause that proceeding to be fundamentally unfair.  We agree.  The objectors were allowed to present all of their other evidence, which was extensive.  We have reviewed Kinney's testimony before the Board and find that it would not have added anything to Salem's review of the siting criteria.  TOTAL's argument regarding Kinney is merely another version of its bias and fundamental unfairness argument, which we have already addressed.

TOTAL also argues that Kinney was the only witness who could address the issue of economics.  We disagree.  Several witnesses testified that Salem did not have any idea who its customers would be, how much they would charge for accepting waste, or what their overhead would be.  TOTAL argues that this information is part of the needs assessment and is a relevant consideration.  Although economics is not listed in section 39.2, TOTAL argues that it is relevant and should have been considered.  Since economics is not a specifically listed criteria, its potential for consideration is discretionary, not mandatory.  
Southwest Energy Corp. v. Illinois Pollution Control Board
, 275 Ill. App. 3d 84 (1995).  We find that the council was thoroughly apprised of the fact that no one had any idea how much the landfill would cost to run or how much it would make.  Therefore, TOTAL did not lose anything by not having Kinney testify about the same things.

TOTAL next argues that it was prejudiced by the applicant's use of an undisclosed expert witness, Wayne Briggs, who was not named in the siting application.  Briggs offered the opinion that the landfills were proposed to be located so as to minimize the effect on the surrounding property and to minimize incompatibility with the surrounding property.  This argument is without merit.  First, there is no law that witnesses must be disclosed before siting hearings.  Second, Briggs was the first witness in four days of hearings over a period of 16 days.  The objectors thoroughly cross-examined him and called three of their own witnesses to contradict his testimony.  TOTAL was not prejudiced in any way by Salem's failure to disclose this witness, and the proceeding was not unfair as a result.

TOTAL's final unfairness argument is that the council did not follow its own rules regarding the conduct of the hearing in that the objectors were not allowed to cross-examine the witnesses called by the applicant.  TOTAL cites 
Daly v. Pollution Control Board
, 264 Ill. App. 3d 968, 970-71 (1994), for the rule that a fair administrative hearing must include the opportunity to be heard, the opportunity to cross-examine witnesses, and impartial rulings on the evidence.  We do not see that the rule set forth in 
Daly
 was violated in this case.  The record is clear that the objectors were allowed to cross-examine all of the applicant's witnesses.  Some of the people whose reports were contained in the siting application did not testify, but all those who testified were offered for cross-examination.  

There is no rule that any person authoring a report relied upon in a siting application must be called as a witness in the siting hearing.  Nor is the right to cross-examine unlimited.  The correct rule is stated as follows:  

"Parties before a local governing body in a siting proceeding must be given the opportunity to present evidence and object to evidence presented, but they need not be given the opportunity to cross-examine opposing parties' witnesses.  This point is also recognized by the General Assembly.  Section 39.2(c) of the Act requires the local governing body to consider any written comment filed within 30 days of the last public hearing.  (415 ILCS 5/39.2(c) (West 1992).)  Obviously, the parties cannot cross-examine those who submit written comments."  
Southwest Energy Corp.
, 275 Ill. App. 3d at 92-93.

In the case at bar, all of the objectors were allowed to present evidence and object to evidence presented.  They were given ample opportunity to cross-examine all of the witnesses.  The procedures followed in the siting hearing were fair.

B. MANIFEST WEIGHT OF THE EVIDENCE

The objectors next argue that the applicant did not meet his burden of proof with regard to the statutory criteria.  On review, the court is limited to a determination of whether the siting authority's decision was contrary to the manifest weight of the evidence.  
Waste Management
, 175 Ill. App. 3d 1023.  "That a different conclusion may be reasonable is insufficient; the opposite conclusion must be clearly evident, plain or indisputable."  
Turlek v. Pollution Control Board
, 274 Ill. App. 3d 244, 249 (1995).  All of the statutory criteria must be satisfied before approval of the siting application can be granted, and the manifest weight of the evidence standard is to be applied to each and every criteria on review.  
Tate v. Illinois Pollution Control Board
, 188 Ill. App. 3d 994, 1022 (1989).       

TOTAL argues that there is no evidence in support of criteria (i) and (iii), regarding the need for the facility, its compatibility with the surrounding land, and its effect on the value of the surrounding land.  We disagree.  Both sides presented evidence on these criteria.  It was up to the council as the siting authority to determine the credibility of the witnesses, to resolve conflicts in the evidence, and to weigh all of the evidence offered.  
Fairview Area Citizens Taskforce v. Illinois Pollution Control Board
, 198 Ill. App. 3d 541, 550 (1990).  The evidence in favor of these criteria is not so lacking that the opposite conclusion is clearly evident.  

CAO additionally argues that the decision granting siting approval is contrary to criteria (viii), which requires the facility to be consistent with the Waste Plan of the county in which the facility is to be located.  The applicant presented evidence that the expansion of landfill No. 2 and the construction of landfill No. 3 were consistent with Marion County's Waste Plan.  The Waste Plan states that it supports Salem's "expansion of its present municipal landfill in both size and service area."  Although the objectors presented evidence that at least one county board member was not aware that the expansion would include counties other than Marion County, there was no evidence that Salem's proposed landfill expansion did not comport with Marion County's Waste Plan.  Therefore, the council's approval of the application on this criteria was not against the manifest weight of the evidence.

C. JURISDICTION

TOTAL argues that Salem did not have jurisdiction to rule on the siting application because it did not follow the statutory requirements of the Illinois Municipal Code (Municipal Code) when annexing the property for the proposed landfills.  See 65 ILCS 5/11-76.1-1, 11-76.1-3 (West 1992).  TOTAL first presented this argument to the Board.  The Board found that it did not have the authority to decide whether the annexation and purchase of the property was conducted according to the applicable statutes, as its authority is "limited to those matters arising under the Act."  The Board also determined that since "the Fourth Circuit Court dismissed the action with prejudice," the Board should proceed with the matter as if Salem had jurisdiction to hear the siting application.  

The Board was correct in finding that TOTAL's attorney, Bill J. Milner, filed an action in the Marion County Circuit Court for the Fourth Judicial Circuit requesting the court to declare that Salem's purchase and annexation of the landfill property were in contravention of the Municipal Code.  On December 11, 1995, the Marion County circuit court dismissed the action with prejudice.  The Board was also correct in finding that it did not have any authority to decide the issue of whether Salem complied with the Municipal Code in purchasing and annexing the property.  The Board's authority is limited to the terms of its enabling statute (415 ILCS 5/5 (West 1992)), which does not extend to matters arising under the Municipal Code.

Additionally, this issue is waived for purposes of our review, in that TOTAL failed to cite any authority for the proposition that if Salem failed to comply with the Municipal Code when purchasing and annexing the landfill property, it was thereby deprived of jurisdiction of the siting hearing.  
Pryor
, 260 Ill. App. 3d 76; 145 Ill. 2d R. 341(e)(7).

D. THE BOARD'S CONSIDERATION OF CAO'S ARGUMENTS

CAO contends that the Board improperly refused to consider its position at the hearing on the petition for review of the siting decision.  This issue is meritless.  The Board considered CAO's arguments and position in affirming the siting decision.  The Board acknowledged that CAO filed a petition for review.  The Board consolidated CAO's petition with TOTAL's.  Further, the Board stated:  "[CAO's petition] contained basically the same arguments as T.O.T.A.L.['s.]  We will only address [CAO] by name in referring to arguments which were not raised and argued by T.O.T.A.L. in this opinion and order."  The order of the Board clearly indicates that it considered all evidence presented and arguments made by both TOTAL and CAO.

III. CONCLUSION

For all the reasons stated, we affirm the Board's order affirming the council's grant of site approval.

Affirmed.

RARICK, J., and MAAG, J., concur.